### IN THE

# SUPREME JUDICIAL COURT

## FOR THE COUNTY OF WORCESTER, OCTOBER TERM 1862, AT WORCESTER.

———

PRESENT:

Hon. GEORGE T. BIGELOW, Chief Justice.
Hon. CHARLES A. DEWEY,  ⎫
Hon. THERON METCALF,   ⎬ Justices.
Hon. PLINY MERRICK,    
Hon. REUBEN A. CHAPMAN, ⎭

———

## WILLIAM DEHON & others *vs.* CALVIN FOSTER & others.*

This court has jurisdiction in equity, upon a proper case being made, to enjoin a citizen of this commonwealth from availing himself of an attachment of personal property in another state, in an action against a debtor who is insolvent under the laws of this commonwealth, and thus preventing the same from coming to the hands of the assignee; and it is no objection that the action was commenced before the institution of proceedings in insolvency, if this was done with knowledge that such proceedings were about to be instituted, and with a view to obtain a preference.

BILL IN EQUITY, alleging that on the 1st of July 1861 the plaintiffs were appointed assignees in insolvency of Nourse, Mason & Co., a firm doing business in Boston; that Nourse, Mason & Co. were insolvent, and had stopped payment on the 1st of June 1861; that Graham, Emlin & Passmore, a firm doing business in Philadelphia, Pennsylvania, were indebted to them in the sum of $3000; that the defendants Calvin Foster

---

* This case and the three following cases were argued in October 1861

& Co. then were and still are creditors of Nourse, Mason & Co. to the amount of $2200, that they were and are citizens of this commonwealth, and their debt was contracted and payable here; that they knew that Nourse, Mason & Co. had stopped payment and were insolvent, and had reason to believe and did believe that proceedings in insolvency were about to be instituted by or against them; and that, with intent to obtain a preference over other creditors, and to avoid the operation of the insolvent laws, Foster & Co. on the 1st of June instituted a suit in Philadelphia against Nourse, Mason & Co., and caused the debt of Graham, Emlin and Passmore to be attached by the process of foreign attachment, which suit and attachment are still pending. The prayer was that Nourse, Mason & Co. might be ordered to assign the said debt to the plaintiffs, and that Foster & Co. might be restrained from proceeding with their suit and attachment, and for other relief. To this bill, the defendants Foster & Co. filed a general demurrer.

*B. F. Thomas & T. L. Nelson,* for the defendants Foster & Co. The insolvent laws, being in derogation of the rights of creditors, are to be strictly construed. Equity jurisdiction is given to this court, in matters of insolvency, better to enforce the provisions of the statutes, as they are found, and not to extend them. *Proprio vigore,* the insolvent laws have no extraterritorial effect.

There is no provision in the statutes on which this prayer can be founded. Section 44, taken in connection with § 45, has no extra-territorial operation. The only power of this court, in a case like the present, is *in personam;* in restraining the prosecution of an unjust and illegal claim. The claim of these defendants is not of that character.

It is plain that a creditor residing in any other state than Massachusetts could not be enjoined from prosecuting his suit. The rights of creditors residing here are equal to the rights of those residing in other states; and the assignment to the plaintiffs only transfers to them the debt in question subject to the elder title acquired by the attachment. If a mortgage valid in Pennsylvania had been executed to the defendants, could they be enjoined from claiming under it?

The facts alleged would not constitute a preference even in this commonwealth. The essential element of collusion with the debtor is wanting. The insolvent laws are not defeated, because they have no force out of this commonwealth. No act which is legal where these laws do not attach can be said to defeat them. The prosecution of the suit to judgment may render the distribution of the estate among creditors less equal; but this inequality results partly from an inherent defect in the law, and partly, perhaps, from an inherent defect of power in the legislature to pass a law which will effect perfect equality. If this debt should be collected and the money brought into Massachusetts, the plaintiffs could not recover it. The answer to an action would be, that Foster & Co. had a just debt, on which, in a court of competent jurisdiction, they had recovered judgment, and acquired a lien on property before any title vested in the assignees; and there is no retroactive effect to the insolvent laws. Such has been the practical construction heretofore. *Blake* v. *Williams*, 6 Pick. 286. *May* v. *Breed*, 7 Cush. 42. See also *Milne* v. *Moreton*, 6 Binn. 353.

A statute assignment cannot operate on property not in the state where it is made. An assignee in insolvency is in no better condition, as to foreign debts, than the insolvent himself; and he takes, not as assignee, but as representative of the insolvent. 2 Kent Com. (6th ed.) 406–408. *Abraham* v. *Plestoro*, 3 Wend. 538. *Johnson* v. *Hunt*, 23 Wend. 87.

*G. F. Hoar & H. Gray, Jr.*, for the plaintiffs. 1. The jurisdiction of a court of equity (except when declaring rights in, or affording protection to, real estate) is *in personam*, and not *in rem*, and is not impaired by the fact that the property is beyond the jurisdiction, if the defendant is within it. *Massie* v. *Watts*, 6 Cranch, 158, 166, and cases cited. *Angus* v. *Angus*, West, Ch. 23. *Mitchell* v. *Bunch*, 2 Paige, 615. *Sutphen* v. *Fowler*, 9 Paige, 282. *Great Falls Manuf. Co.* v. *Worster*, 3 Fost. (N. H.) 462. *Moody* v. *Gay*, 15 Gray, . Upon this principle, a court of chancery has power to restrain its own citizens from commencing or prosecuting a suit in another court of its own jurisdiction, or of a foreign country. *Mackintosh* v. *Ogilvie*,

4 T. R. 193, *n.*, & 3 Swanst. 365, *n.* *Cranstown* v. *Johnston,* 3 Ves. 179, 182, 183 ; S. C. 5 Ves. 277. *Bunbury* v. *Bunbury,* 1 Beav. 318. *Duncan* v. *McCalmont,* 3 Beav. 409. *Graham* v. *Maxwell,* 1 Macn. & Gord. 71. *Carron Iron Co.* v. *Maclaren,* 5 H. L. Cas. 416, 426, 434, 439, 445, 452. *Maclaren* v. *Stainton,* 16 Beav. 286. Eden B. L. (3d ed.) 344, 345. 1 Spence on Eq. 420, 427 ; 2 Ib. 6–9. Drewry on Injunctions, 96–104, and cases cited. 2 Story on Eq. §§ 875, 899, 900, and cases cited.

2. This court has equal power to restrain citizens of this commonwealth from suing in the courts of another state. Gen. Sts. *c.* 113, §§ 1, 2 ; *c.* 118, § 16. *Briggs* v. *French,* 1 Sumner, 504. *Pearce* v. *Olney,* 20 Conn. 544. *Dobson* v. *Pearce,* 1 Duer, 142 ; S. C. 2 Kernan, 156. · *Bank of Bellows Falls* v. *Rutland & Burlington Railroad,* 28 Verm. 476, 477, 479. *Cage* v. *Cassidy,* 23 How. 109, 117. 3 White & Tudor's Lead. Cas. in Eq. (3d Amer. ed.) 175, 201, 498. " A question between its own citizens, it can lead to no conflict of the state with other states, or their citizens, or with the judicial powers of the United States." *Marsh* v. *Putnam,* 3 Gray, 566. *Brigham* v. *Henderson,* 1 Cush. 430. *Beal* v. *Burchstead,* 10 Cush. 523. All the cases in which such relief has been denied have turned upon the complainant's want of equity, and not on the point of jurisdiction. *Mead* v. *Merritt,* 2 Paige, 402. *Bicknell* v. *Field,* 8 Paige, 440, 445. *Burgess* v. *Smith,* 2 Barb. Ch. 276. The refusals of courts of a state to restrain proceedings in courts of the United States, and of the federal courts to restrain suits in the state courts — both of which are domestic tribunals — stand upon peculiar grounds of public policy, which do not apply where the two courts are of different states. *Diggs* v. *Wolcott,* 4 Cranch, 179. *M'Kim* v. *Voorhies,* 7 Cranch, 279. *Sumner* v. *Marcy,* 3 Woodb. & M. 119. *Coster* v. *Griswold,* 4 Edw. Ch. 377. *English* v. *Miller,* 2 Rich. Eq. 320.

3. " Our law recognizes the rule that rights to personal property, including debts, are to be disposed of according to the law of the domicil of the owner, as well *inter vivos* as in case of the owner's decease ; but as this law can operate beyond the country of the owner only by comity, it is taken with this limitation,

that it shall not operate injuriously to the citizens of the state whose laws are invoked to carry it into effect." This is the only exception in the application of the rule. *May* v. *Breed,* 7 Cush. 42. *Dawes* v. *Head,* 3 Pick. 144, 149. *Goodwin* v. *Jones,* 3 Mass. 517. 2 Kent Com. (6th ed.) 406. Eden B. L. (3d ed.) 343. The manifest object and intent of the insolvent law of this commonwealth are to vest in assignees, for equal distribution among all creditors, all the property of the debtor, real and personal, within and without the Commonwealth, not exempted by specific exception or necessary inference. Gen. Sts. *c.* 118, §§ 17, 42, 44, 46, 60, 70. Commissioners' Report in Cutler's Insolvent Laws, (2d ed.) 161, 174. *Ward* v. *Proctor,* 7 Met. 320, 321. *Gray* v. *Bennett,* 3 Met. 525. This court is vested with full equity jurisdiction to carry out in the most effectual manner the policy of the statute, and this power has been liberally construed and freely exercised. Gen. Sts. *c.* 118, § 16. *Barnard* v. *Eaton,* 2 Cush. 301. *Harlow* v. *Tufts,* 4 Cush. 451, 452. *Hill* v. *Hersey,* 1 Gray, 584. *Foster* v. *Goulding,* 9 Gray, 50. All acts contrary to the principles and policy of the insolvent laws, and which indicate a purpose to interfere with the proper distribution of the insolvent's property, are void. *Smith* v. *Hill,* 8 Gray, 574. *Foster* v. *Goulding,* 9 Gray, 53, and cases there cited. The provisions of the insolvent laws have been uniformly so construed and applied by this court as to give them the largest scope and fullest effect. Cases already cited. *Lanckton* v. *Wolcott,* 6 Met. 307. *Richardson* v. *Wyman,* 4 Gray, 555. *Dearborn* v. *Ames,* 8 Gray, 1.

4. The consideration due to the laws or the courts of Pennsylvania affords no defence to this bill. The laws of Pennsylvania may give effect to a foreign assignment, except against her own citizens. *Speed* v. *May,* 17 Penn. State R. 94, and cases cited. If they do not, this court, upon the grounds and authorities already stated, will not allow our citizens to use the laws of another state to evade and defeat our own.

5. The defendant's attachment, made by citizens of Massachusetts to defeat the operation of an existing law of this state, with knowledge of an existing occasion and intent to call the

law into action, gains no force by having anticipated the actual commencement of legal proceedings here. *Smith* v. *Hill,* and *Mackintosh* v. *Ogilvie, ubi supra. Sill* v. *Worswick,* 1 H. Bl. 665. *Neale* v. *Houghton,* 1 H. Bl. 132, *n. Vernon* v. *Hankey,* 2 T. R. 119, 121, 124. *Barker* v. *Goodair,* 11 Ves. 83, 84. *Balme* v. *Hutton,* 9 Bing. 476, 477, 481, 490. 1 Selw. N. P. (12th ed.) 284. *Bholen* v. *Cleveland,* 5 Mason, 174. The case stands upon like grounds with the obligation of a domestic creditor, who has possessed himself of the property of the insolvent in a foreign country, to refund to the assignees. *Blake* v. *Williams,* 6 Pick. 313. *Sill* v. *Worswick, ubi supra. Hunter* v. *Potts,* 4 T. R. 182. *Gibson* v. *Hunter,* 2 H. Bl. 206. Archb. Bankr. (11th ed.) 518.

BIGELOW, C. J. The authority of this court as a court of chancery, upon a proper case being made, to restrain persons within its jurisdiction from prosecuting suits either in the courts of this state or of other states or foreign countries, is clear and indisputable. In the exercise of this power, courts of equity proceed, not upon any claim of right to interfere with or control the course of proceedings in other tribunals, or to prevent them from adjudicating on the rights of parties when drawn in controversy and duly presented for their determination. But the jurisdiction is founded on the clear authority vested in courts of equity over persons within the limits of their jurisdiction and amenable to process, to restrain them from doing acts which will work wrong and injury to others, and are therefore contrary to equity and good conscience. As the decree of the court in such cases is pointed solely at the party, and does not extend to the tribunal where the suit or proceeding is pending, it is wholly immaterial that the party is prosecuting his action in the courts of a foreign state or country. If the case stated in the bill is such as to render it the duty of the court to restrain a party from instituting or carrying on proceedings in a court in this state, it is bound in like manner to enjoin him from prosecuting a suit in a foreign court. 2 Story on Eq. §§ 899, 900. *Mackintosh* v. *Ogilvie,* 3 Swanst. 365, *n.,* & 4 T. R. 193, *n. Carron Iron Co.* v. *Maclaren,* 5 H. L. Cas. 416, 445. *Maclaren* v. *Stainton,* 16

Beav. 286. *Massie* v. *Watts*, 6 Cranch, 158. *Briggs* v. *French*, 1 Sumner, 504. *Dobson* v. *Pearce*, 4 Duer, 142 ; S. C. 2 Kernan, 156. All that is necessary to sustain the jurisdiction in such cases is, that the plaintiff should show a clear equity, and that the defendant should be subject to the authority and within the reach of the process of the court.

Inasmuch as the defendants in the present case are citizens of and residents in this commonwealth, there can be no doubt that the jurisdiction of this court over them is plenary. We have then only to inquire whether the case stated in the bill is sufficient to warrant us in enjoining the defendants Foster & Co. from the further prosecution of the action commenced by them in the courts of the state of Pennsylvania, so far as to prevent them from taking by attachment to their own use, in payment of a debt due to them from insolvent debtors under the laws of the Commonwealth, money which is owing to such insolvent debtors from persons resident in Pennsylvania. It is obvious that this inquiry raises no question involving a conflict of rights between citizens of this and another state. It is simply a controversy as to the relative rights of citizens of our own state to personal property belonging to insolvent debtors, who are also domiciled here. Nor is the validity of a foreign law, or of the lien acquired under it, in any manner called in question. On the contrary, the case proceeds on the ground that the defendants, if allowed to proceed with their action, will perfect the lien which is now inchoate under their attachment, and will thereby establish a valid title to the property of the insolvent debtors under the laws of Pennsylvania.

Looking then at our own laws to ascertain which of the two parties to this suit has a paramount right or superior equity to the debts due to the insolvents from persons residing out of the state, there would seem to be but little if any room open for doubt or controversy. The fundamental principle of the insolvent laws of this commonwealth is, that all the property of the debtor shall be taken and equally distributed among his creditors. To this end it avoids all preferences, and defeats or sets aside all attachments in favor of particular creditors, so that the surrender

of the property to the assignees may be universal and complete. To this entire transfer of the debtor's property, with the exception of the few articles by law exempted from attachment, there is no limitation. It extends to all his property and assets, wherever situated. That it was intended to embrace property in other states and countries, is shown by the provision which requires the debtor to do all acts necessary to give the assignees the rights of those claiming under a voluntary assignment of his estate, " especially of any part thereof which is without this state." Gen. Sts. *c.* 118, § 60. Now it is clear that the act of the defendants in causing the property of the insolvent debtors to be attached in a foreign jurisdiction tends directly to defeat the operation of this law in its most essential features. It prevents a portion of the property of the debtors from coming to their assignees to be equally distributed among their creditors, and gives a preference to certain of their creditors, by which they will obtain payment of their debt in full. It is therefore an attempt by those creditors, citizens of this state, to defeat the operation of our laws, to the injury of the other creditors of the insolvents. This is manifestly contrary to equity. The defendants, being citizens of this state, are bound by its laws. They cannot be permitted to do any acts to evade or counteract their operation, the effect of which is to deprive other citizens of rights which those laws are intended to secure. Certain it is that they could not in any manner or by any process take from the assignees of an insolvent debtor property belonging to him within this state, and appropriate it to the payment of their debt in full. To prevent such appropriation, if the law furnished no adequate and complete remedy, this court would interfere by suitable process in equity. We are unable to see any reason for withholding such interference, merely because our citizens seek to accomplish the same purpose by resorting to a foreign jurisdiction, and with the aid of the laws of another state or country. An act which is unlawful and contrary to equity gains no sanction or validity by the mere form or manner in which it is done. It is none the less a violation of our laws, because it is effected through the instrumentality of a process which is lawful in a foreign tribunal.

By interposing to prevent it, we do not interfere with the jurisdiction of courts in other states, or control the operation of foreign laws. We only assert and enforce our own authority over persons within our jurisdiction, to prevent them from making use of means by which they seek to countervail and escape the operation of our own laws, in derogation of the rights and to the wrong and injury of our own citizens.

It was urged very strenuously by the learned counsel for the defendants, that this bill cannot be maintained, because the statutes of this commonwealth regulating the assignment and distribution of insolvent estates have no extra-territorial effect or operation, and cannot be held to impair or affect a lien or attachment which is valid by the laws of the place where it is created or made ; in other words, that no act or proceeding which is legal where the insolvent laws of this state do not operate can be deemed to impair their effect or to work any prejudice to creditors. But this argument seems to us to proceed on an unfounded assumption. No doubt it is true that the statutes of this commonwealth *ex proprio vigore* have no effect or operation in other states. But it is also true that, by the comity of states and nations, the laws of one country are allowed to a certain extent to control the rights of persons and property in other countries. The general principle is everywhere recognized, that personal property has no locality, and that the laws of the domicil of the owner, and not those of the place where it happens to be, furnish the rule by which its disposition and transfer are regulated and governed. This, in the language of Lord Loughborough, " is not only the law of England, but of every country in the world where law has the semblance of a science." This principle is, however, to be taken with the reasonable limitation that, as the law of a country can operate beyond its limits only by comity, it shall not be allowed to have any effect to the injury of the citizens of the state whose laws are invoked to carry it into effect. This is the principle recognized by the decisions of this court, as well as by those of the courts of Pennsylvania. *Dawes* v. *Head,* 3 Pick. 128. *Blake* v. *Williams,* 6 Pick. 286. *May* v. *Breed,* 7 Cush. 15, 42 *Milne*

v. *Moreton,* 6 Binn. 360. *Lowry* v. *Hall,* 2 Watts & S. 131. *Speed* v. *May,* 17 Penn. State R. 91, 94.

It follows, as a necessary consequence of this well settled principle, that personal property of an insolvent debtor domiciled in this state, which is situated in Pennsylvania, as well as debts due to him from citizens of this state, would vest in the assignees appointed under our insolvent laws, with power to take possession of and collect them either in their own names or in the name of the insolvent, if they were not held or attached by virtue of a process or lien in favor of a creditor which would be valid under the laws of that state. The result, therefore, is, that if it be true, as is contended by the counsel for the defendants, that the attachment made by them of the debt due to the insolvent debtors in Pennsylvania is valid and binding, and vests in them a right superior to that conferred by the assignment under our laws on the plaintiffs as assignees, it is the act of the defendants which defeats the operation of our laws in that state, and prevents the assignees from obtaining the money for equal distribution among all the creditors. It is not the infirmity of our law, but the interposition of the defendants, which operates to deprive the assignees of the power of collecting the debt due to their insolvents in the state of Pennsylvania. So that the object of this suit is to compel the defendants to desist from the prosecution of a suit, the direct effect of which is to defeat the operation of our insolvent laws, and to withdraw from creditors money which would otherwise be equally distributed among them. It would therefore seem to be clear that it is the duty of this court, having regard to the equities between the parties to this suit, as created and fixed by our own laws, to restrain the defendants from any attempt to pursue their attachment further in the courts of Pennsylvania.

That such an exercise of the equity jurisdiction of this court is important and necessary to the full and beneficial operation of our insolvent laws, cannot be doubted. The intimate commercial and business relations which subsist between different states of the Union are such, that it often happens that the property and assets of a debtor are situated in states other than that

of his own and his creditors' domicil. In such cases, if there was no mode in which domestic creditors could be restrained from seeking, by the use of the process of other states, to appropriate the property of their debtors to the payment of their debts, it is obvious that the essential feature of equality of distribution among all the creditors of an insolvent debtor would be defeated, and a system of preferences would exist in direct contravention of the policy of our laws. Nor is the exercise of such a jurisdiction as the bill seeks wholly without precedent. In the case of *Mackintosh* v. *Ogilvie*, 4 T. R. 193, *n.*, & 3 Swanst. 365, *n.*, this precise point was adjudicated. In that case, the plaintiff was assignee of the bankrupt; the defendant, a creditor, who before the bankruptcy went into Scotland and made " arrestments " of debts due to the bankrupt from persons there. Lord Hardwicke, in giving judgment, said it was " like a foreign attachment, by which this court will not suffer a creditor to gain a priority." The jurisdiction was exercised and an injunction issued in that case on the ground that it was against equity for a creditor to evade the laws of his own country, and thereby to obtain a preference to the injury of the other creditors. The authority of this adjudication " by the most consummate judge who ever sat in the court of chancery," and who is said to have perfected " English equity into a symmetrical science," has never been denied or called in question. It certainly seems to rest on the plainest principle of equity.

To the suggestion that the attachment made by the defendants was prior in point of time to the institution of the proceedings in insolvency, the answer is, that, on the facts stated in the bill, such priority does not impair the plaintiff's equity. We doubt very much whether the fact would be at all material, even if the attachment was made *bona fide*, and without any intent to defeat the operation of our insolvent laws; because it tends to contravene the clear intent of our statutes, which aim to vest in the assignee all the property of the debtor which could have been assigned by him or taken on execution against him at the time of the commencement of insolvent proceedings, " although the same is then attached on mesne process as the property of

the debtor." It is true that it does not in terms provide that attachments in other states shall be dissolved, because such an enactment would be without the force of law, as against attachments which are valid according to the laws of the place where they are made. But they nevertheless operate to divert property from the assignees and create preferences, and so are against equity, as between citizens of our own state. But aside from this, it appears in the present case, by the allegations in the bill, that the defendants, when they instituted process in Pennsylvania, and made their attachment, knew that the debtors were insolvent, and had reason to believe that proceedings in insolvency were about to be instituted against them, and caused the attachment to be made with an intent to obtain a preference over other creditors, and to avoid the operation of the insolvent laws of this commonwealth. Under such circumstances, priority gives no equity to the defendants. The purpose to interfere with and prevent the proper distribution of the property of the .nsolvent takes away all claim to equitable consideration which might exist when priority was obtained in good faith. *Smith* v. *Hill,* 8 Gray, 574.

It was urged, as an objection to the exercise of the authority to restrain the defendants from the further prosecution of their action, that the effect would be to enable foreign creditors to step in and appropriate the property by attachment to the payment of their debts, and thereby not only gain a preference over attaching creditors residing in this state, but also prevent the property from passing to the assignees. This objection would be entitled to very grave consideration, if it appeared that there were creditors residing out of the jurisdiction of this court, who could avail themselves of the laws of Pennsylvania to secure their uebts by attachments. But no such fact appears by the bill, and on demurrer we cannot assume that it exists.

*Demurrer overruled.*