Joseph Engel, plaintiff in error, *vs.* Asher Scheuerman, defendant in error.

It appeared that S. had instituted suit against E., in a Court of this State, to recover the sum of $5,000.00, alleged to be due the plaintiff by the defendant, and during the pendency of the suit in this State, the plaintiff instituted a suit against the defendant E. in the Supreme Court of the State of New York, and held him to bail there for the same identical demand for which the suit was pending in the Court of this State. A judgment was obtained by the plaintiff against the defendant, in the Superior Court of this State, in the suit instituted here, which judgment was paid off and satisfied by the defendant; and a bill was filed by the defendant in that judgment against the plaintiff therein, alleging, that after the payment and satisfaction of the judgment obtained in this State, the said plaintiff, *fraudulently* led the defendant in that judgment, (now complainant,) both by word and act, to believe that the suit pending against him in the New York Court would be abandoned, and thereby prevented him from making his defence thereto, as he otherwise should have done, but with full knowledge that the judgment obtained in this State had been paid off and satisfied, afterwards proceeded in the New York Court, and obtained a judgment there, upon the same identical demand. The prayer of the bill is, that the defendant may be perpetually enjoined from enforcing that judgment, so obtained, in the New York Court, against him and his securities on his bail bond: *Held*, that the States of the American Union, except for

Engel *vs.* Scheuerman.

all purposes as specified in the Constitution of the United States, are in legal contemplation, foreign to each other, and that, as both parties are citizens of this State, a Court of Equity has jurisdiction over *the person* of the defendant, to restrain him, by injunction, from enforcing the judgment obtained in the State of New York ; it being contrary to equity, and good conscience, that the defendant should collect both judgments for the same demand ; that there is a clear distinction as to the power and authority of a Court of Equity, in this State, to restrain, by injunction, *the proceedings of a Court in another State*, and the power and authority of the Court to restrain, by injunction, *the personal action of a citizen of this State*. In the one case, a Court of Equity, in this State, has no jurisdiction, in the other it has jurisdiction to restrain the *personal action* of the defendant from enforcing an unconscientious demand in another State, in a proper case made ; that the record now before the Court makes such a case. Comity between the Courts of the several States, does not require the Courts of this State to assume that the Courts of the State of New York, are any more competent to hear and decide the defendant's claim, and do him justice, than are the Courts of this State, to the jurisdiction of which, the defendant has voluntarily submitted the same for adjudication ; and the judgment of the Court below, dismissing the complainant's bill, should be reversed.

Foreign Judgments. Conflict of Jurisdiction. Injunction. Before Judge GREEN. Spalding Superior Court. August Term, 1869.

On the 17th of December, 1864, Scheuerman, in said county, sued out an attachment against Engel, returnable to February Term, 1865, of Spalding Inferior Court, for $5,000. The basis of attachment was that an averment that Engel resided out of this State, though he did reside in this State. The claim was for that amount of bills upon the various banks of Georgia, Alabama, and South Carolina, which Scheuerman delivered to Engel to carry through the Confederate lines to New York, for Scheuerman's benefit. It was levied on Engel's storehouse, in Griffin, Georgia. Engel knew nothing of this till he returned from New York city to Griffin, in 1865, after the war. He filed his defense, the cause was tried, and in February, 1867, Scheuerman obtained a judgment against him for $1,430 00, besides interest and costs. Because of the great depreciation of said bank bills, and because $3,300 00 of them were forcibly taken from

him, by the pickets of the army, Engel was dissatisfied with the judgment, and sought a writ of error to the Supreme Court. The Judge refused to certify his bill of exceptions, because not presented to him in time. (See *Engel vs. Speer, 36th Georgia Reports,* 258.) Thus said judgment became final. About the 1st of September, 1867, the sheriff having determined to sell Engel's property, to pay said judgment, Engel borrowed the money and paid it off, and the *fi. fa.* was receipted in full, by Scheuerman's attorney.

Before Engel left New York, to-wit, in July, 1865, Scheuerman sued Engel in the Supreme Court of the City of New York, for said identical demand, and held him to bail; Engel filed his defense thereto. After said payment, Scheuerman induced Engel to believe that said suit in New York was abandoned and would not be prosecuted further. But about the 25th of January, 1868, Engel's attorney in New York informed him by letter that said case was pending and being pressed to trial. In a few days after getting this information, and before it was possible to get the evidence of said payment to New York, said cause was tried and resulted in a judgment against him for $6,720 00, with $146- 30 for costs. Scheuerman now says he did not get justice in the trial here, and is willing only to credit the New York judgment with said amount paid on the Georgia judgment, but will enforce the New York judgment against Engel and his securities for the balance. Engel has been a merchant for twenty years, and is dependent upon his credit in New York for success in business. The existence of that New York judgment is unjust for the reasons aforesaid, and annoys and injures Engel. Therefore, for these reasons averred in his bill, he prayed that Scheuerman, his agents, attorneys and solicitors, be enjoined from enforcing said New York judgment against Engel, or his securities, and that Scheuerman be decreed to satisfy the same.

The injunction was granted in March, 1868, by Judge Speer, the then Chancellor of Flint Circuit. Scheuerman's solicitors moved, before Judge Green, to dismiss said bill, upon the ground that the said Court had no jurisdiction over

the subject matter, and could not compel Scheuerman to refuse to collect a judgment of a New York Court, or.to give a release or satisfaction thereof. Judge Green dismissed the bill and that is assigned as error.

PEEPLES & STEWART, for plaintiff in error, cited Hines & Hobbs *et. al.*, vs. Rawson, *ante ;* 2 Paige's Ch. R., 402-4, 606; Story's Eq. Juris., secs. 899, 900; Ed. on Injunctions, 141-2; 3rd Vesey Jr., ·170, 182; 5th Vesey Jr., 71;· 3 Atkins, 589.

DOYAL & NUNNALLY, SPEER & BECK, for defendant.

WARNER, J.

The question presented for our consideration and judgment, in this case, is whether the complainant has the right, in a Court of Equity, to enjoin the defendant (he being a citizen of this State) from enforcing the collection of a judgment obtained by him, against the complainant, and his securities, in the Supreme Court of the city of New York, upon the statement of facts contained in the record. The defendant, Scheuerman, sued the complainant, Engel, in the Courts of this State, on a claim for $5,000 00, obtained a judgment thereon, which has been paid off and satisfied. Whilst the suit was pending in the Courts of this State, Scheuerman· sued Engel, in the Supreme Court of New York, for the same identical claim, and held him to bail there. The complainant alleges in his bill praying for the injunction, that after he had paid off and satisfied the judgment obtained against him in this State, the defendant *fraudulently* led him to believe, both by word and act, that the suit pending against him in New York would be abandoned, and, thereby, prevented him from making his defence thereto, as he otherwise should have done; that the defendant, with a full knowledge that the judgment obtained in this State had been paid off and satisfied, afterwards proceeded in the New York Court and obtained a judgment there against him, for the same identical demand, and is endeavoring to enforce its collection against him and his securities there.

The States of the American Union, except for all purposes as specified in the Constitution of the United States, are, in legal contemplation, foreign to each other. The Courts of one State, or county, cannot exercise any control or superintending authority over those of another State, or county, but they have an undoubted authority to control all persons, and things, within their own territorial limits. In such cases, the Courts do not pretend to direct or control the foreign Court, but, without regard to the situation of the subject matter of the dispute, they consider the equities between the parties, and decree, *in personam*, according to those equities, and enforce obedience to their decrees by process *in personam*. Story's Equity Jurisprudence, section 899. In Foster vs. Vassall, 3rd Atkyn's Report, 589, Lord Hardwicke said : "If the bill be brought in England, and the cause of the suit arise in Ireland, on the plantations, as the defendant is here, the Courts do *agere in personam;* and may, by compulsion on the person, by process of the Court, compel him to do justice." In Cranstown vs. Johnson (3d Vesey Jr., 183) the Master of the Rolls said , "I will lay down the rule as broad as this: this Court will not permit him (the defendant) to avail himself of the law of any other country to do what would be *gross injustice."* In the case of Massie vs. Watts (6th Cranch's Report, 148) Chief Justice Marshal, after reviewing the authorities upon this question, said : "Upon the authority of these cases, and of others, which are to be found in the books, as well as upon general principles, this Court is of opinion, that in a case of fraud, of trust, or of contract, the jurisdiction of a Court of Chancery is sustainable *wherever the person be found,* although lands not within the jurisdiction of that Court, may be affected by the decree." In the case of Mead vs. Meritt (2nd Paige, 403) which was relied on by the counsel for defendant in error, the Chancellor recognizes the general principle, in regard to jurisdiction of the person of the defendant, but says : "I am not aware that any Court of Equity in the Union, has deliberately decided that it will exercise the power, by process of injunction, of *restraining proceedings* which have been pre-

Engel *vs.* Scheuerman.

viously commenced in the Courts of another State. Not only comity, but public policy, forbids the exercise of such a power."

This bill is not filed for the purpose of *restraining the proceedings of the Court* of New York; the Courts of this State have no jurisdiction to do that; nor would the Courts of this State have jurisdiction to enjoin the enforcement of a judgment obtained in the Courts of New York, between citizens of that State, *resident there.* The question here is, whether a Court of Chancery, in this State, has jurisdiction to restrain the *personal action of the defendant,* so far as to prohibit him from enforcing the collection of the judgment obtained in the Courts of New York, according to the facts of this case. There is a clear distinction as to the power and, authority of a Court of Equity, in this State, to restrain by injunction the *proceedings of a Court* in another State, and the power and authority of such Court, to restrain, by injunction, the *personal action of a citizen of this State.* In the one case, a Court of Equity, in this State, has no jurisdiction, in the other, it has jurisdiction to restrain, by injunction the *personal action* of the defendant himself from enforcing an *unconscientious* demand in another State, whether that demand is reduced to judgment or not, upon a proper case being made.

The record, now before us, in our judgment, makes such a case. The defendant *voluntarily* came into the Courts of this State, in the first instance, to have his claim adjudicated, and that claim has been adjudicated therein, paid off and discharged. We are not aware that comity between the several States of the Union, requires that the Courts of this State shall *assume* that the Courts of the State of New York are any more competent to hear and decide the defendant's claim, and to do him justice, than are the Courts of this State, to the jurisdiction of which, he voluntarily submitted the same for adjudication, in the first instance. In restraining him, by injunction, from enforcing this unconscientious demand, in the State of New York, the Court acts upon his conscience, *in personam,* and not upon *the Courts* of that State; the *per-*

*son* of the defendant is within the jurisdiction of the Court, the proceedings of the Courts in the State of New York are not, and we do not interfere with them.   The Supreme Court in New York, in which the judgment was obtained, has no interest in the enforcement of that judgment, the defendant has; and a Court of Equity, in this State, having jurisdiction of his *person*, will restrain him from making that interest available, when it would be against *conscience* and the principles of equity, that he should do so.   In the language of the Master of the Rolls, in Cranstown vs. Johnston, this Court will not permit the defendant to avail himself of the law of any other country, to do what would be *gross injustice*.

Let the judgment of the Court below be reversed.