PAUL WIERSE v. BETTIE S. THOMAS, trading as THOMAS & CO., and THE ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 23 October, 1907).

1. Attachment in Personam—Parties—Residence—Earnings—Exemptions.

The defendant partnership attached, in another State, the earnings of the plaintiff due by defendant railroad company, and defendants were, at the time of the attachment, citizens and residents of this State, and the defendant corporation was a railroad company, with its principal place of business in this State, and operating in Virginia, North Carolina, South Carolina and Georgia. The sum attached was due by the defendant railroad company to plaintiff for personal services, rendered as an employee, within sixty days prior to the levy, and was for the necessary support of plaintiff and his family, supported by him. Plaintiff obtained an order in the courts of this State restraining the defendant *in personam* from prosecuting the proceedings in attachment: *Held* (1), that the plaintiff's earnings at the time this action was commenced were exempted, both by the personal property exemptions provided by the Constitution of this State and by the provisions of The Code, sec. 493; Revisal, sec. 678; (2) that the restraining order should be continued to the hearing.

2. Courts—Jurisdiction—Injunction—Resident Creditor—Equity—Exemptions—Evasion—Suitors.

A court of equity has jurisdiction to enjoin a resident creditor from instituting or prosecuting an action or proceeding in another State for the purpose of evading the exemption laws of this State, and of collecting his claim by subjecting to its satisfaction property or credits which the debtor could claim as exempt if the action or proceeding were brought within the State.

3. Same—Jurisdiction—Resident Creditor—Injunctions—Attachment—Constitutional Law.

The courts of the resident creditor have power in proper cases to issue an injunction, not in restraint of the action of the court of another State, but operating *in personam* on the creditor and compelling him to obey the laws of his own Commonwealth. Such is not in violation of Article IV, section 1, of the Federal Constitution, providing that in each State full faith and credit shall be given to the judicial proceedings of every other State, providing that citizens of each State shall be entitled to all the privileges or immunities of the several States.

4. **Same—Jurisdiction—Resident Parties—Attachment—Evasion—Constitutional Law—Presumptions.**

When it appears that the plaintiff and his creditor were resident and domiciled in the same city of this State, at which the defendant railroad company had its office and principal place of business, and where the local courts were open and accessible, and that the defendants, T. & Co., caused an attachment in another State to be issued against an indebtedness due to plaintiff by defendant railroad company, protected by our own Constitution and laws from the payment of the debt, the intention from such facts and circumstances of the creditor to evade the exemption laws of his own State will be presumed.

5. **Same—Resident Parties—Exemptions—Attachment—Evasion—Disobedience—Remedy.**

When an attachment is issued in another State by a resident of this State against another resident for the purpose of avoiding the exemption laws, the *situs* of the debt may be in such other State, but it is also in this State, where the defendant railroad also has its residence and principal place of business, and where the debt due to the plaintiff, its employee, is subject to our general exemption laws and the statute passed for the special protection of a laborer's wages; and upon the disobedience of a restraining order upon the creditor *in personam*, the creditor will be made to restore the amount wrongfully collected.

6. **Exemptions—Cessation of Residence.**

The general exemption laws of this State, under our Constitution and statutes, will not operate when it is made to appear that plaintiff ceased to be a resident and citizen of this State at any time before the property is applicable to the creditor's claim.

CIVIL ACTION, heard on return to restraining order, before *Jones, J.,* at October Term, 1906, of the Superior Court of New Hanover County.

The Court found the facts to be as follows: "That the plaintiff, at the date of the institution of these proceedings, was a resident of North Carolina, the defendants, Thomas & Co., residents of North Carolina, and the codefendant a corporation, having its principal place of business at Wilmington, N. C., operating a railroad in Virginia, North Carolina, South Carolina and Georgia. Plaintiff and other defendant reside in Wilmington, N. C. That, at said date plaintiff was

a resident, having a family residing in Wilmington, where plaintiff worked as an employee of defendant company. That on the .... day of May, 1906, defendants Thomas & Co. sent an account against plaintiff for collection to Atlanta, Ga., where an attachment was issued against plaintiff in a justice's court, levying upon the indebtedness of the Atlantic Coast Line Railroad Company to plaintiff, such action not being prosecuted further by reason of the restraining order issued in this cause. That the amount of indebtedness due by the defendant company to plaintiff was $70, being for his personal services, rendered within sixty days prior to said levy, and said sum is necessary for the support of said debtor and his family, supported by him. That the debt claimed by Thomas & Co. against plaintiff is just and correct, and was then due." And thereupon adjudged that the restraining order be continued to the hearing, and defendants Thomas & Co. excepted and appealed.

*John D. Bellamy* for plaintiff.
*R. G. Grady* for defendants.

HOKE, J. At the time this action was commenced and the Georgia attachment was levied, the property attached was protected, both by the personal property exemption provided for by the Constitution and the general exemption laws of the State, and also by section 493 of The Code (section 678 of the present Revisal), prohibiting wages due for personal services of the debtor rendered within sixty days prior to the levy, and necessary for the use of the family which was supported by his labor, from being subjected and applied to the laborer's indebtedness; and, this being true, on the facts established, the Judge correctly ruled that the restraining order be continued to the hearing.

As stated in Amer. and Eng. Encyclopedia, Vol. XII, p. 256: "It may be regarded as settled that a court of equity has jurisdiction to enjoin a resident creditor from instituting

or prosecuting an action or proceeding in another State for the purpose of evading the exemption laws of his State, and of collecting his claim by subjecting to its satisfaction property or credits which the debtor could claim as exempt if the action or proceeding were brought within the State. And in such a case an injunction should generally be granted." And the doctrine so stated is grounded in right reason and fully sustained by authority. *Dehon et al. v. Foster,* 86 Mass., 545; *Teager v. Landsley et al.,* 69 Iowa, 725; *Engle v. Schenerman,* 40 Ga., 206; *Keyser v. Rice,* 47 Md., 203; *Snook v. Snelzer,* 25 Ohio, 516; Waples on Homestead Exemptions, pp. 888, 889.

It is objected chiefly that an injunction on the facts before us is in violation of Article IV, section 1, of the Federal Constitution, providing that in each State full faith and credit shall be given to the judicial proceedings of every other State, etc., and section 2, same article, providing that citizens of each State shall be entitled to all the privileges and immunities of the several States. This view is fully discussed in the authorities cited, and rejected as unsound; and the correct doctrine is held to be that the courts of the resident creditor have power in proper cases to issue an injunction, not in restraint of the action of the court of another State, but operating *in personam* on the creditor and compelling him to obey the laws of his own Commonwealth. Thus, in *Dehon's case, supra, Chief Justice Bigelow,* speaking to this question, says: "The authority of this Court, as a court of chancery, upon a proper case being made, to restrain persons within its jurisdiction from prosecuting suits, either in the courts of this State or of other States or foreign countries, is clear and indisputable. In the exercise of this power courts of equity proceed, not upon any claim of right to interfere with or control the course of proceedings in other tribunals, or to prevent them from adjudicating on the rights of parties when drawn in controversy and duly presented for their determination, but the jurisdiction is founded on the clear authority vested

in courts of equity over persons within the limits of their jurisdiction and amenable to process, to restrain them from doing acts which will work wrong and injury to others, and are, therefore, contrary to equity and good conscience.   As the decree of the court in such cases is pointed solely at the party, and does not extend to the tribunal where the suit or proceeding is pending, it is wholly immaterial that the party is prosecuting his action in the courts of a foreign State or country.   If the case stated in the bill is such as to render it the duty of the court to restrain a party from instituting or carrying on proceedings in a court in this State, it is bound in like manner to enjoin him from prosecuting a suit in a foreign court.   2 Story on Eq., pp. 889-900; *Mackintosh v. Ogilvie,* 3 Swanst., 365n, and 4 T. R., 193n; *Carron Iron Co. v. Maclaren,* 5 H. L. Cas., 416, 445; *Maclaren v. Stainton,* 16 Beav., 286." And in *Snook v. Snetzer,* 25 Ohio, 519, *Rex, J.,* delivering the opinion, says: "In exercising this authority, courts proceed, not upon any claim of right to control or stay proceedings in the courts of another State or country, but upon the ground that the person on whom the restraining order is made resides within the jurisdiction and in the power of the court issuing it.   The order operates upon the person of the party and directs him to proceed no further in the action, and not upon the court of the foreign State or country in which the action is pending." On this subject *Mr. Justice Story,* in his Commentaries on Equity Jurisprudence, sec. 899, says: "Although the courts of one country have no authority to stay proceedings in the courts of another, they have an undoubted authority to control all persons and things within their territorial limits.   When, therefore, both parties to a suit in a foreign country are resident within the territorial limits of another country, the courts of equity in the latter may act *in personam* upon those parties, and direct them by injunction to proceed no further in such suit.   In such a case these courts act upon acknowledged principles of public law in regard to jurisdiction.

They do not pretend to direct or control the foreign court, but, without regard to the situation of the subject-matter in dispute, they consider the equities between the parties, and decree *in personam* according to those equities, and enforce obedience to their decrees *in personam.*" And in the case of *Keyser v. Rice,* 47 Md., *Bowie, Judge,* for the Court, said: "The power of the State to compel its citizens to respect and obey its laws, even beyond its own territorial limits, is supported, we think, by the great preponderance of precedent and authority." And again: "All these instances imply that the citizen going from one State to another shall be entitled to the privileges and immunities of a citizen of the State to which he goes, but they do not absolve him from the duties and obligations of a citizen to the State to which he belongs and from which he went. As long as a citizen belongs to a State, he owes it obedience; and, as between States, that State in which he is domiciled has jurisdiction over his person and his personal relations to other citizens of the State."

And the question was directly presented to the Supreme Court of the United States, the final arbiter on such matters, in *Cole v. Cunningham,* 133 U. S., 107, in which *Chief Justice Fuller,* in a learned and elaborate opinion, established the proposition that the Constitution of the United States, in proper case, permits equity courts of one State to control persons within their jurisdiction from prosecuting suits in another State, and applied the principle to a case not unlike the one now before us. The same opinion, too, cites with approval several cases where the same principle is applied on facts almost identical with those existent here, and making the cases an apt authority in support of our present decision. True, it is not found as a fact in express terms that the purpose of the creditor in resorting to the Georgia courts was to evade the exemption laws of his own State, but, as both plaintiff and his creditor were then resident and domiciled in the same city, where the railroad company had its office and principal

place of business, and where the local courts were open and accessible, no other reason could be well conceived or suggested, and the existence of such a purpose is an inference well-nigh conclusive from the facts which are declared.  As said in the *Keyser case, supra:* "We think the intention to evade is necessarily presumed.  Rational creatures must be presumed to intend the necessary and inevitable consequences of their deliberate acts."

There is nothing in our present decision which is intended to militate against the position, undoubtedly correct, that our exemption laws have no extraterritorial vigor; nor do we question in any way the doctrine declared by the United States Supreme Court in several recent decisions, that, for the purpose of attachment and jurisdiction to the extent that it may be so acquired, the *situs* of the debt is at the debtor's residence, or wherever he may be personally served with process.  *Railroad Co. v. Deer,* 200 U. S., 176; *Harris v. Balk,* 198 U. S., 214; *Railroad v. Sturm,* 174 U. S., 710. While the debt may have a *situs* in the State of Georgia, it has its *situs,* too, in the State of North Carolina, where the railroad also has its residence and principal place of business, and where the debt due to plaintiff, its employee, is subject to our general exemption laws and the statute passed for the especial protection of a laborer's wages; and, though the Georgia court has jurisdiction for the purpose, and to the extent indicated, and if it should proceed its judgment applying the property on the claim would be allowed full force and effect, so as to protect the railroad company from a second payment, this does not impair the right of the court of the creditor's residence, acting *in personam,* to compel obedience to its own laws, to the extent permitted by the proper application of the constitutional principle; and if such creditor, in defiance of an injunction duly served in an action properly constituted, should proceed in the Georgia courts, he would be subject, perhaps, to punishment for disobeying the restraining order, and could certainly be made

here to restore the amount wrongfully collected from the debtor. *Teager v. Langley, supra.* In *Sturm's case, supra,* which was strongly urged upon our attention in behalf of defendants, it does not appear in any report of the case to which we have access that the attaching creditor was a resident of the State whose exemption laws were alleged to have been violated, and the right of the court of the resident creditor to compel obedience to its own laws does not seem to have been presented. It was certainly not considered or passed upon. The court only applied the recognized principle that, the court where the attachment issued having acquired jurisdiction, its judgment condemning the debt would protect the garnishee from a second payment. The same doctrine was applied here in a recent case—*Wright v. Railroad,* 141 N. C., 164—and neither decision is in conflict with our present opinion, nor the principle upon which it is made to rest.

We note an affidavit sent up with the record to the effect that, since this suit was instituted, the plaintiff has removed from the State and become a resident of South Carolina. This is not adverted to by the court in its findings of fact; and, while the findings are not conclusive upon this Court in a case of this kind (*Mayo v. Commissioners,* 122 N. C., 5), as the evidence on the matter may not all have been sent up, we make no comment, except to say that, if it should be made to appear that plaintiff has ceased to be a resident and citizen of this State at any time before the property is applicable to the creditor's claim, the general exemption laws of our State would not operate in his favor. The authorities, however, seem to have decided that the statute passed to protect a laborer's wages (Revisal, sec. 678) would, in any event, be effective for his protection. *Goodwin v. Claytor,* 137 N. C., 224-236.

There is no error, and the judgment of the lower court is

Affirmed.