### NELSON et al. v. LAMM et al.

(Court of Civil Appeals of Texas. San Antonio. April 24, 1912. Rehearing Denied May 29, 1912.)

1. APPEAL AND ERROR (§ 920*)—PRESUMPTIONS—BURDEN OF SHOWING ERROR.

Where the evidence on an application for a temporary restraining order does not appear in the statement of facts on an appeal from the judgment, it will be presumed that the order would not have been granted if the plaintiff had not shown himself entitled thereto.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3714–3721; Dec. Dig. § 920.*]

2. APPEAL AND ERROR (§ 920*)—REVIEW—PRESUMPTIONS.

Where the statement of facts shows that the evidence on an application for a temporary restraining order was by agreement read and considered on the trial of the case, but does not set out such evidence, it will be presumed that the evidence was sufficient to support the court's findings.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3714–3721; Dec. Dig. § 920.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

**3. INJUNCTION (§ 33*) — RESTRAINING ACTIONS—TERRITORIAL LIMITS—OTHER STATES.**

Where a court of equity has jurisdiction of the person of the defendants, it may restrain them from prosecuting actions in another state or a foreign country, although the actions involve property located in such other country.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 70, 71; Dec. Dig. § 33.*]

**4. INJUNCTION (§ 208*) — DECREE — FORM — CONTENTS IN GENERAL.**

In an action by a corporation and its officers and directors against former officers who are still assuming to act for it in another country, a decree, directing defendants to dismiss all suits brought by them in behalf of the corporation and to cancel all powers of attorney from the corporation to them recorded in such other country, is not erroneous because the evidence does not show, and the decree does not specify, what suits are to be dismissed and what powers of attorney to be canceled, since defendants themselves have this information.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 427, 431; Dec. Dig. § 208.*]

**5. CORPORATIONS (§ 319*)—ACCOUNTING BY OFFICERS — DECREE — CONFORMITY TO EVIDENCE.**

In an action by a mining corporation against former officers who are still assuming to act for it, a decree requiring defendants to account generally for all bullion, money, etc., received by them, is not erroneous because not supported by evidence that any bullion or money has been received by them, since, if they have not received any, they can show this fact by their account.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1415, 1416–1425; Dec. Dig. § 319.*]

Appeal from District Court, Bexar County; Claude V. Birkhead, Judge.

Action by J. K. Lamm and others against J. P. Nelson and others. From a judgment for plaintiffs, defendants appeal. Affirmed.

Jos. Ryan and Geo. Powell, both of San Antonio, for appellants. Webb & Goeth, of San Antonio, for appellees.

MOURSUND, J. On May 24, 1911, J. K. Lamm, Frank R. Newton, R. Battersby, H. J. Lamm, Ernest J. Lamm, Kearney Mason, Mrs. Mary Fest, and A. A. Gittinger, for themselves as officers and stockholders of the Eureka Gold Mining Company, and for the use and benefit of all other stockholders of said company, and the Eureka Gold Mining Company, alleged to be a corporation duly incorporated with its principal office and domicile at San Antonio, Bexar county, Tex., sued J. P. Nelson, W. L. Frame, and J. G. Griner, all alleged to be residents of Bexar county, Tex. It is alleged in said petition that the individuals first above named are the duly elected and qualified directors of said corporation; that said J. K. Lamm is its president, said Frank R. Newton its secretary, and H. J. Lamm its treasurer; that all of said parties are also stockholders in said corporation. Plaintiffs further allege: That the defendants for two years held all the property, books, and papers of said Eureka Gold Mining Company, having been officers thereof. That said parties still falsely claim to be the officers of such corporation, and unlawfully withhold from plaintiffs the property, books, and papers of said company. That on account of the bad management of defendants during their tenure of office the company became badly indebted, and bankruptcy proceedings were instituted against same in Mexico. That the directors legally negotiated a loan for $50,000 for the purpose of paying off the indebtedness, and saving the valuable properties of the company, and executed a mortgage on said properties to secure the payment of said note. That defendants have brought suit in the Second Court of Letters at C. P. Diaz, Mexico, to cancel said mortgage, and compel the return of said note to the corporation. That upon learning of such action by defendants the plaintiffs, who are directors of said company, at once revoked all powers of attorney and representations thereof held by defendants Nelson and Griner, and instructions were given to have said powers of attorney canceled in Mexico. That while defendants claimed to have resigned as officers of said company in March, 1911, yet they continued to act as officers of said company in Mexico. That defendant Nelson recorded in Mexico powers of attorney and other papers showing that he is president of said company, and defendant Griner recorded powers of attorney showing that he is attorney for said company; and plaintiffs fear that defendants will continue to represent themselves as president, secretary, and attorney for said company and will carry on their litigation in Mexico and continue in possession of the property in Mexico. Plaintiffs pray that defendants be enjoined from further acting as officers or attorney of said company, or from exercising ownership or supervision over any of its property, and from further prosecuting said suit in the Second Court of Letters at C. P. Diaz; that they be compelled to withdraw and dismiss the same before May 27, 1911; that they be required to produce in court all books, papers, records, and documents of said company, and to each make an accounting showing the receipts and expenditures from said mines; that upon the auditing of such statement and accounts defendants be required to pay into court or into the treasury of said company, as the court may determine, the net balances due the stockholders of said corporation; and that the plaintiffs have judgment for themselves and all other stockholders for any balances. They also prayed that the plaintiffs named in the petition as the present officers and directors of the company be adjudged to be such officers and directors, and that all powers of attorney heretofore held by defendants to represent said company be canceled.

---

Appellant Nelson answered describing the papers in his possession relating to the company, denying that the plaintiffs were the lawfully elected officers of the Eureka Gold Mining Company, also every allegation charged against him reflecting upon him, and reserving the right to contest plaintiffs' petition and the writ of injunction. He also alleged that he had not acted or pretended to act as an officer or agent of the company since his resignation in March, 1911, and that he had received no money from the mines. Appellant Griner answered denying that he had any books or papers of the Eureka Gold Mining Company; that he had theretofore represented said company in the republic of Mexico under a proper power of attorney, which he has not in his possession. He denied all and singular the allegations in plaintiffs' petition contained in so far as they charge him with any responsibility or liability to the plaintiffs or to the stockholders of the Eureka Gold Mining Company. Neither of these answers was sworn to. W. L. Frame, who was also a defendant, has not appealed, so it is unnecessary to state the contents of his answer.

On May 25, 1911, this cause was heard in chambers in the Forty-Fifth district court, and a restraining order granted. On June 10, 1911, the cause was transferred to the district court of the Seventy-Third district of Bexar county, and on August 29, 1911, a jury being waived, the court rendered judgment which declared that the plaintiffs, J. K. Lamm, F. R. Newton, R. Battersby, H. J. Lamm, Ernest J. Lamm, and Kearney Mason are the lawful officers of said company, that J. K. Lamm is its president, Frank R. Newton its secretary, and H. J. Lamm its treasurer, and decreed that defendants turn over to plaintiffs all property, books, papers, and documents of said company, and enjoined defendants from exercising any authority, ownership, supervision, or control over any of the properties of said Eureka Gold Mining Company in the United States of America or the republic of Mexico and from claiming to be officers of said company, from prosecuting the suit in the Second Court of Letters in C. P. Diaz, and from interfering with the sale of the mines and mining properties under foreclosure proceedings in a certain suit by Ernest J. Lamm against the Eureka Gold Mining Company in said Second Court of Letters; also enjoining the defendants from in any manner instituting or further prosecuting any other suit or suits in Mexico or the United States arising out of the same subject-matter, and particularly a certain suit in Durango on a promissory note for $56,118.13 under the signature of W. L. Frame and J. P. Nelson, and ordering and requiring the defendants within 10 days from date of judgment to cause said suit to be dismissed, and to dismiss any levy, embargo, or other process or proceeding issued out of said last-mentioned suit; also requiring each of defendants within 10 days to file their sworn statement showing that they have withdrawn and dismissed said suit and proceedings issued out of it. Said judgment also requires defendants to deliver within 20 days to J. K. Lamm, as president of said company, or his attorneys of record, a complete statement under oath of all receipts and disbursements for said company, and shall especially account in such statement for any and all bullion or money which may have been taken from said mines or received for its account, together with all other property or effects of any kind which has come into their possession as officers of said company. It also enjoined and restrained the defendants from acting or pretending to act under any powers of attorney held by them purporting to be given by the Eureka Gold Mining Company, or its directors or any of its agents, representatives, or officers, and canceled said powers of attorney so that the parties nor any of them shall have the right or power in the future to prosecute any suit or suits by virtue of said powers of attorney, and required defendants to at once cancel of record in the republic of Mexico all such powers of attorney, such cancellation to be made as required by the laws of the state where the same may have been made or protocolized or registered, also required them to file oath within ten days showing compliance with such order. Defendants Nelson and Griner have appealed.

The third and tenth assignments of error question the sufficiency of the evidence to sustain the judgment in so far as it decrees J. K. Lamm, F. R. Newton, R. Battersby, H. J. Lamm, Ernest J. Lamm, and Kearney Mason to be the lawful officers of the Eureka Gold Mining Company, and that J. K. Lamm is its president, F. R. Newton its secretary, and H. J. Lamm its treasurer. Appellant Griner's answer contains no general denial, and his special denials do not go to this question. Appellant Nelson denies that plaintiffs are the lawfully elected officers and directors of the Eureka Gold Mining Company.

[1] J. K. Lamm stated that he was president of the company, F. R. Newton that he was secretary, and E. J. Lamm that he was one of the directors. The statement of facts contains no other evidence on this point, but shows that the court was permitted by agreement to have read to him and to consider the testimony taken upon the hearing of this case in chambers. Such testimony is not embraced in the statement of facts; but appellants, in their statement of the nature and result of the suit, show that upon such hearing a restraining order was granted, and the presumption arises that the court would not have granted same if the plaintiffs had not shown themselves entitled thereto.

[2] The court in the judgment now com-

plained of finds that the parties named were the officers. It is presumed that the judge will not make a finding unless there is evidence to support it. We do not know what evidence was before the court, but do know from the statement of facts prepared by appellants that there was other evidence besides that set out in such statement. This being the case, we should assume the facts were established by the absent evidence. Johnson v. Ry., 69 Tex. 642, 7 S. W. 379; Matlock v. Stone, 77 Ark. 195, 91 S. W. 555; Simpson v. Talbot & Co., 72 Ark. 185, 79 S. W. 761; Hershy v. Baer, 45 Ark. 240.

The assignments are therefore overruled. We doubt whether appellants can be heard to question the sufficiency of the evidence to prove that plaintiffs are the lawful officers of the corporation, because they have not denied such capacity under oath. The suit is by the corporation and by individuals who sue as officers and directors. Appellants disclaimed being officers of the company, so it was not a suit involving the title to the offices. However, we do not think it necessary to decide this question.

The fourth, fifth, and fifteenth assignments of error complain of that portion of the judgment relating to the powers of attorney; it being contended that the court had no jurisdiction to cancel the same or require the defendants to cancel same, and that such decree destroyed property rights of defendants in a foreign jurisdiction.

The decree does not attempt to set aside any conveyances made under the powers of attorney. It cancels the powers of attorney so that the defendants shall in the future have no right or power to prosecute any suit or suits by virtue thereof or any substitutes therefor, or to do any other acts or things adversely to the interests of plaintiffs; and requires defendants to cancel such powers of attorney within ten days.

[3] The doctrine is well recognized that a court of equity having jurisdiction of the persons may command and require them to proceed no further with suits in another state or in a foreign country. Moton v. Hull, 77 Tex. 80, 13 S. W. 849, 8 L. R. A. 722; Cole v. Cunningham, 133 U. S. 107, 10 Sup. Ct. 269, 33 L. Ed. 538; Wierse v. Thomas, 145 N. C. 261, 59 S. E. 58, 15 L. R. A. (N. S.) 1012; Commercial Acetylene Co. v. Avery (C. C.) 152 Fed. 642; Story on Equity Jurisprudence, §§ 899, 900; High on Injunctions, §§ 105, 106. Even though the property which is the subject-matter of the controversy be located in another country, the court will not be prevented from exercising jurisdiction where all the parties are amenable to its process. High on Injunctions, § 899. In the case of Cole v. Cunningham, 133 U. S. 107, 10 Sup. Ct. 269, 33 L. Ed. 538, the court says: "The jurisdiction of the English Court of Chancery to restrain persons within its territorial limits and under its jurisdiction from doing anything abroad, whether the thing forbidden be a conveyance or other act in pais, or the institution or the prosecution of an action in a foreign court, is well settled." The court also quotes with approval from Phelps v. McDonald, 99 U. S. 298, 25 L. Ed. 473, as follows: "Where the necessary parties are before a court of equity, it is immaterial that the res of the controversy, whether it be real or personal property, is beyond the territorial jurisdiction of the tribunal. It has the power to compel the defendant to do all things necessary, according to the lex loci rei sitæ, which he could do voluntarily, to give full effect to the decree against him. Without regard to the situation of the subject-matter, such courts consider the equities between the parties, and decree in personam according to those equities, and enforce obedience to their decree by process in personam." And quotes from Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565, as follows: "The state, through its tribunals, may compel persons domiciled within its limits to execute, in pursuance of their contracts respecting property elsewhere situated, instruments in such form and with such solemnities as to transfer the title, so far as such formalities can be complied with; and the exercise of this jurisdiction in no manner interferes with the supreme control over the property by the state within which it is situated."

We think the judgment is sustained by ample authority, and overrule these assignments.

The seventh assignment is disposed of by what we have said regarding the fourth and tenth assignments, and the same is overruled.

[4] The eleventh assignment complains because the judgment orders defendants to dismiss their suits in Mexico and requires them to deliver for cancellation their powers of attorney in Mexico, because (1) such decree is null and void; (2) there is no testimony showing the character of instruments to be canceled nor the suits to be abated and dismissed. The first objection has been disposed of by what we have said in passing on the fourth, fifth, and fifteenth assignments. The latter objection is not tenable. The defendants knew exactly what suits they had brought and what powers of attorney they held. The decree does not deprive them of any rights, and if it had attempted to name the suits and instruments, some omissions might have occurred rendering the decree ineffective. We overrule this assignment.

[5] The thirteenth assignment is as follows: "Said decree and judgment is erroneous in requiring defendants to account for bullion and money taken from the Eureka Gold Mining Company's properties; there being no evidence showing that defendants received such bullion or money, or when the same was received, nor what sum or quantity, therefore the court was without author-

ity to decree an accounting as against these defendants."

The decree requires a general accounting, and says the defendants shall especially account in their statement for any and all bullion or money which may have been taken from said mines or mining properties or received for or on account of said company, together with all other property or effects of any other kind which may have come into their possession as such officers of said Eureka Gold Mining Company. We fail to see why they should be exempted from accounting for the bullion if they had charge of any. If there was no bullion, money, property, or effects, they can say so in their statement; if there was, they should account for the same. We see no error in this, and overrule the assignment.

The judgment is affirmed.