PHILIP A. R. STATON, ET AL., PLAINTIFFS V. JERRI RUSSELL, F/K/A JERRI RUSSELL BRAME, ET AL., DEFENDANTS, CROSS-CLAIMANTS, AND THIRD-PARTY DEFENDANTS

------

PHILIP A. R. STATON, ET AL., PLAINTIFFS V. CENTURA BANK, ET AL., DEFENDANTS AND THIRD-PARTY DEFENDANTS

------

PIEDMONT INSTITUTE OF PAIN MANAGEMENT, ET AL., PLAINTIFFS V. CENTURA BANK, ET AL., DEFENDANTS AND THIRD-PARTY DEFENDANTS

------

INGEBORG STATON, MERCEDES STATON, ET AL., PLAINTIFFS V. CENTURA BANK, ET AL., DEFENDANTS

------

INGEBORG STATON, MERCEDES STATON, ET AL., PLAINTIFFS V. THE PIEDMONT INSTITUTE OF PAIN MANAGEMENT, DEFENDANTS

No. COA 00-1253

(Filed 18 June 2002)

**1. Injunction— antisuit—jurisdiction—out-of-state residents**

The trial court did not err in a complex action involving trusts, a stock sale, and money held in North Carolina by issuing an antisuit injunction prohibiting the prosecution of a Florida declaratory judgment claim in the same matter. Although a court of one state may not restrain an action in another state by an order directed to a court of that state, it may enjoin the parties from proceeding in another state if it has acquired jurisdiction. The appellants in this case subjected themselves to the North Carolina judicial system when they chose North Carolina as the forum for their actions.

1

**2. Injunction— antisuit—sufficiency of grounds**

Sufficient equitable grounds existed for an antisuit injunction where a Florida action was filed which was duplicative of North Carolina cases; the Florida action was vexatious and harassing; and appellants' continued prosecution of the Florida action threatened the North Carolina court's jurisdiction over issues that affect the rights of parties not represented in the North Carolina system.

**3. Injunction— antisuit—Florida declaratory judgment action—specific property in North Carolina**

The trial court possessed the equitable power to enjoin appellants from pursuing a declaratory judgment action in Florida where appellants sought to define the validity of documents and trusts and the right to money held in those trusts in North Carolina. When a suit deals with specific property, a court is authorized to enjoin a party from bringing a new action in another court where the other action has the potential to delay or interfere with adjudication of rights affecting the property.

**4. Injunction— antisuit—findings—form and substance**

The trial court's findings succinctly stated the reasons for the issuance of an antisuit injunction as required by Rules 65 and 52 of the North Carolina Rules of Civil Procedure, and the findings were sufficient to invoke the court's power to issue the order under Rule 65 and N.C.G.S. § 1-485.

**5. Injunction— antisuit—security—not required**

The trial court did not err by issuing an antisuit injunction without requiring that security be posted where appellants failed to seek any security deposit as a condition precedent to entry of the antisuit injunction; appellants failed to make any showing of how they would be harmed by issuance of the injunction; and it was implicit from the trial court's findings that one purpose of the antisuit injunction was to preserve the court's jurisdiction over the interpretation of documents involved in the cases.

**6. Injunction— antisuit—findings—sufficiency**

The trial court did not abuse its discretion in its findings when issuing an antisuit injunction where sufficient evidence was adduced to support each of the findings and the findings supported the conclusions.

**STATON v. RUSSELL**

[151 N.C. App. 1 (2002)]

Appeal by Ingeborg Staton, Mercedes Staton, the 1991 Revocable Living Trust of Ingeborg Staton, and the 1983 Revocable Living Trust of Mercedes Staton from order entered 18 July 2000 by Judge Thomas W. Seay, Jr., in Forsyth County Superior Court. Heard in the Court of Appeals 18 February 2002.

*Davis & Harwell, P.A., by Fred R. Harwell, Jr., for plaintiff-appellants.*

*Bell, Davis & Pitt, P.A., by William K. Davis, James R. Fox, Kevin G. Williams, and Stephen M. Russell, for plaintiff-appellee, Philip Staton.*

EAGLES, Chief Judge.

Appellants, Ingeborg Staton, Mercedes Staton, the 1991 Revocable Living Trust of Ingeborg Staton, and the 1983 Revocable Living Trust of Mercedes Staton, and appellee, Philip Staton, are parties in three of five complex litigation actions arising from a dispute that began in March of 1996. All five North Carolina lawsuits have been consolidated for discovery and other pretrial proceedings (the North Carolina cases or consolidated cases). Appellants and appellee are not adverse parties in any of the North Carolina cases. Philip Staton is a citizen of the United States of America and maintains a residence, among other places, in Annandale, Virginia. Ingeborg Staton is a resident citizen of Colombia, South America, and a non-resident citizen of the United States of America. Mercedes Staton is a resident citizen of Columbia, South America. The revocable trust appellants are Florida trusts but are connected with North Carolina because the trust assets were deposited into a North Carolina bank by wire transfer from a Florida bank.

In 1987, appellants and appellee (collectively, the Statons) gained control of a significant block of Panamco stock that had been held in trust for their benefit. Tom Brame, Jerri Brame, and the accounting firm of Hirsh, Berney & Company assisted in the management of these assets. In December 1988, the Statons, the Brames, and attorney Archibald Scales entered into a memorandum of understanding giving the Brames and Hirsh a de facto power of attorney to advise and act on behalf of the Statons. In 1991, appellee signed an appointment of agent and power of attorney to the Brames and T&J Ventures for himself. Appellee also signed an appointment of agent to the Brames and T&J Ventures for himself in his capacity as co-trustee of the Ingeborg Staton Revocable Living Trust. In March 1992, Mercedes and Ingeborg

Staton each gave appellee a general power of attorney. In September 1992, in their capacities as trustees of revocable trusts, Mercedes and Ingeborg Staton both signed general powers of attorney naming appellee as attorney-in-fact. Appellee was appointed co-trustee of the Revocable Living Trust of Ingeborg Staton and the Revocable Living Trust of Mercedes Staton.

In 1993, the Statons agreed to sell the Panamco stock. In June 1993, an irrevocable appointment of sellers' agency was executed that granted to appellee the authority to act on behalf of Ingeborg and Mercedes Staton and their trusts in matters relating to the sale of the Panamco stock and the proceeds. The proceeds of the sale were deposited into an account at Centura Bank in Winston-Salem, North Carolina. In his affidavit dated 10 January 2000, Philip Staton alleged that the Brames engaged in a scheme whereby the funds were wrongfully put into an account over which the Brames had ownership so that the Brames could convert and defraud the Statons of their assets.

In early November 1993, the Brames and Centura Bank established the Staton Foundation with $2 million from the stock sale proceeds. Thereafter, Tom Brame asked appellee to sign three identical durable powers of attorney for Ingeborg, Mercedes, and appellee. Brame claimed that Centura Bank needed this authority to be able to continue managing the Statons' money. On 24 November 1993, appellee, as attorney-in-fact for Ingeborg and Mercedes, signed these powers of attorney. Subsequently, using stock sale proceeds, Tom Brame established four charitable lead unitrusts (CLUTS) having a combined total value of $18 million.

In March 1996, after learning about these trusts and the Staton Foundation, appellee filed suit against the Brames in Forsyth County Superior Court in Winston-Salem and obtained an injunction preventing the Brames from further dissipating the Statons' assets. Other suits were subsequently filed in Forsyth County. Appellee and appellants claimed that creation of the CLUTS and the Staton Foundation was not authorized and was the fruit of fraud and/or mistake. At issue in these cases is the validity and interpretation of documents used or relied upon to create the CLUTS and the Staton Foundation.

On 22 October 1999, appellants filed a civil action against appellee in the Circuit Court of Hillsborough County, Florida. In this Florida action, appellants sought a declaratory judgment with respect to certain powers of attorney, trust indentures, and other documents

**STATON v. RUSSELL**

[151 N.C. App. 1 (2002)]

executed in Florida between 1988 and 1992. On 10 January 2000, appellee moved in the Circuit Court of Hillsborough County, Florida, to dismiss the Florida declaratory judgment action. The Florida trial court denied appellee's motion on 3 April 2000.

On 5 June 2000, appellee moved in the Superior Court of Forsyth County, North Carolina, to enjoin appellants from prosecuting appellants' Florida declaratory judgment action. The Honorable Thomas W. Seay, Jr., granted appellee's motion for an injunction (antisuit injunction) on 18 July 2000. The trial court ordered:

> [Respondents] are hereby enjoined from any further pursuit of, or participation whatsoever in, the declaratory judgment action filed by the Respondents as Plaintiffs against the Petitioner as Defendant, in the Circuit Court of the Thirteenth Judicial Circuit of the State of Florida, Hillsboro County, and captioned <u>Mercedes Staton, et al. v. Philip A. R. Staton</u>, Case Number 99-8556, Division C (the "Florida Action"), save and except, the Respondents may take the appropriate steps necessary to dismiss the Florida Action without being in violation of this Order.

In support of its order, Judge Seay made the following findings:

> 1. This Court has jurisdiction over Respondents. While Respondents are not residents of North Carolina, they are also not residents of any other state of the United States, but are residents of Columbia, South America. They have filed Complaints and sought relief from the Superior Court of Forsyth County, North Carolina, have consented to its jurisdiction over them and have availed themselves of its processes and procedures for over four (4) years. They are willing participants in these Consolidated Cases and have thereby submitted themselves to the jurisdiction of this Court;

> 2. The Florida Action was filed in October, 1999, over three (3) years after the Respondents filed Complaints in and consented to the jurisdiction of the Superior Courts of the State of North Carolina. Respondents reaffirmed their choice of North Carolina courts [sic] jurisdiction as late as March 25, 1999, when they filed an additional cause of action against Piedmont Institute of Pain Management, et al.;

> 3. Depositions have been taken in the Consolidated Cases of approximately fifty-five (55) individuals, generating over one hundred (100) volumes of testimony and over eight hundred (800)

exhibits. Over 1,500 pleadings, motions, or other filings have been made in the Consolidated Cases;

4. The Florida Action is duplicative of and serves no useful purpose not already being served in the Consolidated Cases, inasmuch as the issues pending in the Florida Action are also issues before this Court in the Consolidated Cases, in which all parties appear. The Florida Action multiplies litigation, duplicates issues of fact and law and results in an unnecessary and wasteful use of Court resources and litigant resources. The continued prosecution of the Florida Action threatens to additionally delay the orderly disposition of the Consolidated Cases;

5. Equity demands that the Respondents be enjoined from further prosecuting the Florida Action, and it is within the inherent power of this Court to enter this Order to protect the rights and interests of all of the parties involved in the Consolidated Cases, many of whom are not parties in the Florida Action and whose rights will not be represented in the Florida Action;

6. Equity demands the issuance of this Order. The Order is consistent with the law of the State of North Carolina and necessary to avoid the unnecessary expenditure of time, resources, and costs resulting from the simultaneous maintenance of the Consolidated Cases and the Florida Action;

7. The issuance of this Order seeks to prevent any further depletion of this Court's or any other court's time and resources;

8. This Order not only provides the relief sought by the Petitioner and other moving parties, but also serves the best interests of the Respondents by ensuring that their assets are not being further expended in the unnecessary and duplicative Florida Action;

9. Based upon the foregoing findings, the Court further finds that this Order is justified under the inherent power of the Court, N.C. Gen. Stat. § 1-485 and N.C. Gen. Stat. § 1A-1, Rule 65, in that there is a reasonable apprehension of irreparable loss of time and financial resources unless injunctive relief is granted and such relief is necessary to protect the rights of all parties to the Consolidated Cases.

In this appeal, appellants contend that the Superior Court erred by enjoining appellants from pursuing their declaratory judgment

lawsuit in Florida. Appellee contends that the appeal should be dismissed because (1) the trial court refused appellants' request for certification under Rule 54(b) of the North Carolina Rules of Civil Procedure and (2) appellants have failed to show that the trial court's order affects a substantial right that would be lost without immediate interlocutory review.

While we agree with appellee's contention that appellants have failed to show that the trial court's antisuit injunction affects a substantial right that would be lost without immediate interlocutory review, it is our view that the administration of justice will be best served by treating the appeal as a writ of certiorari pursuant to our discretionary authority under Rule 21(a) of the North Carolina Rules of Appellate Procedure. *See* N.C.G.S. § 7A-32(c); *Bailey v. Gooding,* 301 N.C. 205, 210-11, 270 S.E.2d 431, 434 (1980) (recognized "the discretionary authority of the Court of Appeals to treat a purported appeal as a petition for writ of certiorari and to issue its writ in order to consider the appeal"); *Bumgarner v. Tomblin,* 63 N.C. App. 636, 640, 306 S.E.2d 178, 182 (1983). Accordingly, we turn to the substantive issues raised by appellants.

In support of their contention that the trial court's injunction was entered in error, appellants argue: (1) the trial court erred by issuing an antisuit injunction against appellants because appellants are not residents of North Carolina; (2) the trial court erred because the grounds upon which the injunction was based are not sufficient as a matter of law to justify enjoining even North Carolina residents from prosecuting similar or identical litigation simultaneously in other states; (3) the trial court erred by issuing an antisuit injunction against appellants because the Supreme Court of the United States has held that the simultaneous prosecution of the same case in two different jurisdictions is proper and does not affect jurisdiction of either court to hear the matter; (4) the Superior Court's antisuit injunction violates the requirements of Rules 52, 58, and 65 of the North Carolina Rules of Civil Procedure; (5) the trial court erred under Rule 65 of the North Carolina Rules of Civil Procedure because the trial court did not consider whether security should be required; and (6) the Superior Court abused its discretion by failing to make adequate findings of fact as required by Rule 52 of the North Carolina Rules of Civil Procedure and by failing to state conclusions of law.

I.

**[1]** Appellants first argue that the trial court erred by entering the antisuit injunction because appellants are not residents of North Carolina. Appellants rely on *Wierse v. Thomas*, 145 N.C. 261, 59 S.E. 58 (1907), as support for the contention that in North Carolina an antisuit injunction will not lie unless the party against whom the injunction is issued is a North Carolina resident. In *Wierse* our Supreme Court held that:

> [T]he courts of the resident creditor have power in proper cases to issue an injunction, not in restraint of the action of the court of another State, but operating *in personam* on the creditor and compelling him to obey the laws of his own Commonwealth. . . . In exercising this authority, courts proceed, not upon any claim of right to control or stay proceedings in the courts of another State or country, but upon the ground that the person on whom the restraining order is made resides within the jurisdiction and in the power of the court issuing it.

*Id.* at 264-65, 59 S.E. at 58-59 (citation omitted) (internal quotations omitted).

Appellee cogently notes that *Wierse* and the other cases relied upon by appellants predate the modern concept of personal jurisdiction that was articulated by the Supreme Court in *International Shoe Co. v. State of Washington*, 326 U.S. 310, 90 L. Ed. 95 (1945). In *International Shoe*, the Supreme Court stated that "due process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* at 316, 90 L. Ed. at 102 (internal quotations omitted).

North Carolina cases decided in the post *International Shoe* era do not support appellants' argument for a residency-based requirement for an antisuit injunction. In *Childress v. Johnson Motor Lines, Inc.*, 235 N.C. 522, 531, 70 S.E.2d 558, 564 (1952), our Supreme Court stated that "[i]t is fundamental that a court of one state may not restrain the prosecution of an action in a court of another state by order or decree directed to the court or any of its officers." The Court then recited the "well established" rule regarding antisuit injunctions:

[A] court . . . which has acquired jurisdiction of the parties, has power, on proper cause shown, to enjoin them from proceeding with an action in another state, . . ., particularly where such parties are citizens or residents of the state, or with respect to a controversy between the same parties of which it obtained jurisdiction prior to the foreign court.

*Id.* (citation omitted) (internal quotations omitted). In *Amos v. Southern Ry. Co.*, 237 N.C. 714, 719, 75 S.E.2d 908, 912 (1953), the Court, citing *Childress*, stated that "when a resident or nonresident invokes the jurisdiction of our courts by instituting an action therein, the court may prescribe the terms upon which [the party] may be allowed to prosecute such an action." Furthermore, in *Wallace Butts Ins. Agency, Inc. v. Runge*, 68 N.C. App. 196, 201-02, 314 S.E.2d 293, 297 (1997), this Court held that:

> The law of North Carolina provides that an injunction may issue against a litigant when an attempt is made to subsequently prosecute an identical action in an effort to subvert the rulings of the courts of this State and subject the defendant to unreasonable and vexatious burdens.

Here, though appellants are not residents of North Carolina, they availed themselves of the jurisdiction of our courts when they filed their claims. Appellants chose the courts of North Carolina as the forum in which to pursue their claims. Upon choosing North Carolina as the forum for their actions, appellants subjected themselves to both the benefits and burdens of our judicial system. Accordingly, we hold that the trial court here had the jurisdictional power to issue an antisuit injunction against appellants.

## II.

[2] Appellants next argue that the grounds upon which the antisuit injunction was based are not sufficient as a matter of law to support enjoining even North Carolina residents from prosecuting similar or identical litigation simultaneously in other states. Appellants argue that the injunction issued by Judge Seay is similar to the injunction reversed by our Supreme Court in *Evans v. Morrow*, 234 N.C. 600, 68 S.E.2d 258 (1951). In *Evans*, the Court noted that "[a] court of equity will not restrain a citizen from invoking the aid of the courts in another state simply because it may be somewhat more convenient or somewhat less expensive to his adversary to compel him to carry on his litigation at home." *Id.* at 605, 68 S.E.2d at 261. The *Evans* Court

also rejected differing rules of practice and procedure and distrust of the competency of the foreign court as grounds for the issuance of an antisuit injunction. *Id.*, 68 S.E.2d at 262.

Here, Judge Seay found additional reasons, not seen in *Evans*, that demanded the equitable remedy of issuance of an antisuit injunction. In finding number four, Judge Seay found that:

> The Florida Action is duplicative of and serves no useful purpose not already being served in the Consolidated Cases, inasmuch as the issues pending in the Florida Action are also issues before this Court in the Consolidated Cases, in which all parties appear. The Florida Action multiplies litigation, duplicates issues of fact and law and results in an unnecessary and wasteful use of Court resources and litigant resources. The continued prosecution of the Florida Action threatens to additionally delay the orderly disposition of the Consolidated Cases.

In finding of fact number five, Judge Seay found that equity demanded the issuance of the antisuit injunction in order to "protect the rights and interests of all of the parties involved in the Consolidated Cases, many of whom are not parties in the Florida Action and whose rights will not be represented in the Florida Action."

In Texas, antisuit injunctions have been recognized as appropriate "(1) to address a threat to the court's jurisdiction; (2) to prevent the evasion of important public policy; (3) to prevent a multiplicity of suits; or (4) to protect a party from vexatious or harassing litigation." *Golden Rule Ins. Co v. Harper*, 925 S.W.2d 649, 651 (Tex. 1996). In *Harper*, the Texas Supreme Court also noted that "[t]he party seeking the injunction must show that a clear equity demands the injunction." *Id.*

From Judge Seay's order, it is apparent that the trial court found: (1) the Florida action was duplicative of the North Carolina cases; (2) the Florida action was vexatious and harassing in that it "results in an unnecessary and wasteful use of Court resources and litigant resources;" and (3) appellants' continued prosecution of the Florida action threatened our trial court's jurisdiction over issues that affect the rights of parties not represented in the Florida action. Based on these and other findings in Judge Seay's order, we hold that sufficient equitable grounds existed to support the trial court's antisuit injunction.

### III.

**[3]** Appellants next argue that simultaneous prosecution of the same case in two different jurisdictions is proper and does not affect the jurisdiction of either court to hear the matter. Appellants point to *Kline v. Burke Constr. Co.*, 260 U.S. 226, 67 L. Ed. 226 (1922). In *Kline*, the Supreme Court of the United States distinguished *in rem* cases, where antisuit injunctions are necessary to protect the court's jurisdiction over "the thing," from *in personam* cases where antisuit injunctions are not needed to protect the court's jurisdiction over a controversy. The Court explained that:

> [A] controversy is not a thing, and a controversy over a mere question of personal liability does not tend to impair or defeat the jurisdiction of the court in which a prior action for the same cause is pending.

*Id.* at 230, 67 L. Ed. at 230.

Unlike the situation in *Kline*, appellants here seek declaratory judgments defining the validity of documents and trusts and the right to property, i.e. the money held in those trusts in North Carolina. When a suit deals with specific property, a court is authorized to enjoin a party from bringing a new action in another court where that other action has the potential to delay or interfere with adjudication of rights affecting such property. *See Kline*, 260 U.S. 226, 67 L. Ed. 226. Accordingly, for these reasons and the reasons stated in Section II of this opinion, we hold that the trial court possessed the equitable power to enjoin appellants from pursuing the declaratory judgment action in Florida.

### IV.

**[4]** Appellants argue that the antisuit injunction violates the requirements of Rules 52, 58, and 65 of the North Carolina Rules of Civil Procedure. Rule 65(d) requires that an injunction "shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts enjoined or restrained . . . ." N.C. R. Civ. P. 65(d). Rule 52(a)(2) states that "findings of fact and conclusions of law are necessary on the granting or denying of a preliminary injunction or any other provisional remedy only when required by statute expressly relating to such remedy or requested by a party." N.C. R. Civ. P. 52(a)(2).

Appellants summarily argue that the trial court's injunction does not comply in form or substance with the requirements of Rules 52 and 65. Appellants assert that because of this noncompliance, the injunction is not a proper judgment under Rule 58 of the Rules of Civil Procedure. *See generally* N.C. R. Civ. P. 58.

After review of the form and substance of the injunctive order, we conclude that the order adequately set forth findings that succinctly stated the reasons for the issuance of the injunction as required by Rules 65 and 52 of the North Carolina Rules of Civil Procedure. In addition, the order made findings sufficient to invoke the court's power to issue the order under Rule 65 and N.C.G.S. § 1-485. Accordingly, we hold that this assignment of error fails.

## V.

**[5]** Appellants contend that the trial court erred by issuing its injunction without considering whether appellee must post any security. The injunction was issued without requiring that any security be posted.

To preserve an issue for review, North Carolina Rule of Appellate Procedure 10(b)(1) states:

> In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context.

North Carolina Rule of Civil Procedure 65(c) states:

> No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the judge deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

In *Keith v. Day*, 60 N.C. App. 559, 561, 299 S.E.2d 296, 297 (1983), we noted that "it is well-settled that no security is required when a preliminary injunction is issued to preserve the trial court's jurisdiction over the subject matter involved." The *Keith* Court concluded that the "as the court deems proper" language of Rule 65(c) "means that there are some instances when it is proper for no security to be required of a party seeking injunctive relief." *Id.* at 562, 299 S.E.2d at

298. In *Keith*, this Court settled the rule for the requirement of security as follows:

> [T]he [trial court] has power not only to set the amount of security but to dispense with any security requirement whatsoever where the restraint will do the defendant "no material damage," [citations omitted] where there "has been no proof of likelihood of harm," [citations omitted] and where the applicant for equitable relief has "considerable assets and [is] . . . able to respond in damages if [defendant] does suffer damages by reason of [a wrongful] injunction" [citations omitted].

*Id.* (quoting *Federal Prescription Services, Inc. v. American Pharmaceutical Assoc.*, 636 F.2d 755, 759 (D.C. Cir. 1980).

In *Huff v. Huff*, 69 N.C. App. 447, 317 S.E.2d 65 (1984), this Court considered the propriety of an injunction prohibiting a husband from pursuing an absolute divorce action in Florida during the pendency of the action for divorce from bed and board brought by the wife in Haywood County, North Carolina. In affirming the trial court's ex parte order enjoining the husband from pursuing the Florida action, Judge (later Justice) Whichard wrote, "[i]t is at least implicit in the findings and conclusions that one purpose of the restraining order was to preserve the court's jurisdiction over the subject matter involved." *Id.* at 454, 317 S.E.2d at 69.

After careful review of the trial court's order, the record, and the parties' briefs, we conclude that: (1) in the court below, appellants failed to seek any security deposit as a condition precedent to entry of the antisuit injunction; (2) appellants failed to make any showing regarding how appellants would be harmed by the issuance of the injunction; and (3) it is implicit from the trial court's findings that one purpose of the antisuit injunction is to preserve the court's jurisdiction over the interpretation of documents involved in the consolidated cases.

Accordingly, we conclude that the assignment of error based upon the trial court issuing the antisuit injunction without requiring appellee to provide security fails.

## VI.

[6] Appellants' final argument is that the trial court abused its discretion by failing to make adequate findings of fact and failing to state

conclusions of law as required by Rule 52 of the North Carolina Rules of Civil Procedure.

Appellants first argue that the trial court erred by finding in paragraph one that appellants had "consented to [the Superior Court's] jurisdiction over them and have availed themselves of its processes and procedures for over four (4) years." Appellants next argue that the trial court erred by finding in paragraph four that the Florida lawsuit "is duplicative of and serves no useful purpose not already being served in the Consolidated Cases, inasmuch as the issues pending in the Florida Action are also issues before this Court in the Consolidated Cases, in which all parties appear." Appellants also argue that the trial court erred by finding in paragraph five that "[e]quity demands that the Respondents [appellants] be enjoined from further prosecuting the Florida Action, and it is within the inherent power of this Court to enter this Order to protect the rights and interests of all of the parties involved in the Consolidated Cases, many of whom are not parties in the Florida Action." Finally, appellants argue that the trial court's findings in paragraphs six, seven, and eight also constitute reversible error.

After careful review of the record, we conclude that the trial court did not abuse its discretion in making the findings that appellants now challenge on appeal. Sufficient evidence was adduced to support each of the trial court's findings of fact. The factual findings made by the trial court support the trial court's conclusions of law. The trial court's conclusions are consistent with the law of North Carolina. Accordingly, we hold that entry of the antisuit injunction was proper. Appellants' final argument fails.

------------

For the foregoing reasons we conclude that the trial court did not err by enjoining appellants from pursuing their declaratory judgment action in Florida. The trial court acted within its jurisdiction and inherent authority to (1) protect its jurisdiction over subject matter before it; (2) prevent the prosecution of a duplicative action; (3) protect the rights of those parties not represented in the Florida action; and (4) prevent appellants from prosecuting a vexatious and harassing action that would result in the unnecessary and wasteful use of court and litigant resources. Accordingly, we affirm.

Affirmed.

Judges McCULLOUGH and BIGGS concur.