ELIZABETH SMITH ZALIAGIRIS, Plaintiff v. THOMAS E. ZALIAGIRIS, SR., Defendant

No. COA03-649

(Filed 1 June 2004)

## 1. Appeal and Error— interlocutory appeal—writ of certiorari

It is an appropriate exercise of the Court of Appeals' discretion to issue a writ of certiorari in an interlocutory appeal where there is merit to an appellant's substantive arguments and it is in the interests of justice to treat the appeal as a petition for a writ of certiorari.

## 2. Divorce— equitable distribution—expert witness fee as sanction—required notice

An award against a defendant in an equitable distribution proceeding as a sanction was reversed because defendant was not given proper notice that he would be subject to the sanction or notice of the grounds for the sanction. The trial court initially ordered defendant to pay plaintiff's expert witness fee as a court cost, but changed the award to a sanction under N.C.G.S. § 50-21(e) and added plaintiff's related attorney fee after it was pointed out that the expert had not been subpoenaed. The sanction was also improper to the extent that it was issued under N.C.G.S. § 1A-1, Rule 11 because it had nothing to do with the improper signing or filing of documents with the court.

## 3. Child Support, Custody, and Visitation— child support— obligation to subsequent child—findings

A child support order was reversed and remanded where, in an action in which the presumptive guidelines did not apply, the court's finding that defendant was not under any other child support obligation was contradicted by uncontroverted evidence that defendant was under a district court order to provide support for a child born from a subsequent marriage. The findings were not sufficient to establish that the court took due regard of defendant's estates, earnings, conditions, and other facts of the particular case.

**4. Child Support, Custody, and Visitation— permanent child support—retroactive date**

The failure to set an earlier retroactive date for permanent child support (which was at a lower amount than the temporary support) was not an abuse of discretion.

Judge LEVINSON dissenting.

Appeal by defendant from orders entered 11 September 2002 and 30 October 2002 by Judge Regan A. Miller in Mecklenburg County District Court.[1] Heard in the Court of Appeals 25 February 2004.

*James, McElroy & Diehl, P.A., by G. Russell Kornegay, III and Preston O. Odom, III, for plaintiff-appellee.*

*Horack, Talley, Pharr & Lowndes, P.A., by Kary C. Watson and Tate K. Sterrett, for defendant-appellant.*

HUNTER, Judge.

Thomas E. Zaliagiris, Sr. ("defendant") appeals from an amended Judgment and Order on Equitable Distribution, Alimony, and Child Support filed 11 September 2002 and a Memorandum Order filed 30 October 2002. Because we conclude the trial court (1) erred in assessing sanctions against defendant without giving him proper due process notice, and (2) erred in failing to take into account defendant's child support obligation to a child born of a subsequent marriage in setting defendant's permanent child support payments in a case not controlled by the presumptive child support guidelines, we reverse in part and remand.

Defendant and Elizabeth Smith Zaliagiris ("plaintiff") were married on 20 August 1983 and separated on 21 January 1998. On 7 February 2000, plaintiff filed a complaint seeking custody of the two children born of the marriage, child support, post-separation support, alimony, equitable distribution, and attorney's fees. On 17 April 2000, defendant filed his answer and counterclaim. Following the resolution of the post-separation support, temporary child support, and custody claims, the remaining equitable distribution, alimony, and child support claims came on for trial on 13 February 2002. Prior to trial,

---

1. Defendant's notice of appeal states that defendant is also appealing orders entered 22 December 2000, 22 January 2001, 19 March 2001, 17 April 2001, 24 September 2001, 5 November 2001, 11 February 2002, and 24 June 2002. Defendant, however, has failed to preserve his appeal from any of these orders, and we, in fact, note a number of these orders are not even contained in the record on appeal.

the trial court, on motion of plaintiff, entered a preliminary injunction freezing all of defendant's assets, which resulted in defendant releasing his attorney and proceeding to trial *pro se* due to his representation he would be unable to pay an attorney.

At trial, both parties produced expert witness testimony regarding the valuation of defendant's twenty-five percent (25%) share in a business entity. T. Randolph Whitt ("Whitt"), plaintiff's expert, testified that the interest was valued at $413,000.00 on the date the parties separated and was worth $527,000.00 in August 2001. Timothy Allen Stump ("Stump"), defendant's expert, testified that on the date of separation, defendant's interest in the company was only $61,241.00, and in October 2001 was worth $172,509.00. Stump had been unaware until shortly before trial that defendant had sold his ownership interest in the business for $400,000.00 in 2001.

With regard to the child support portion of the action, both parties agree that this was not a case in which the presumptive child support guidelines apply. Prior to trial, defendant submitted an affidavit in which he stated that he was responsible for child support in the amount of $1,440.00 per month for a child born during his subsequent marriage who was not a part of the action. At trial, both plaintiff and defendant produced evidence that defendant was under a court order to pay child support for this child in the amount of $1,440.00. The record further indicates that a Catawba County District Court order requiring defendant to pay this amount was entered into evidence by defendant.[2]

In a Judgment and Order filed 24 June 2002, the trial court found that the value of defendant's interest in the business was $413,000.00 on the date of separation and ordered defendant to reimburse plaintiff for the cost of hiring Whitt as an expert witness. The trial court also found that although defendant had a child from a subsequent marriage, and was now separated, he was nevertheless not under a court order or other written obligation to provide child support for that child, and thus the trial court did not factor in any other child support obligation in determining defendant's child support requirements in this case. In addition, the trial court made the award of alimony and permanent child support retroactively effective to 1 February 2002.

2. Although this order is not contained in the record on appeal as an exhibit introduced at trial, the transcript provides sufficient context to establish that this child support order from Catawba County was introduced at trial.

Both parties subsequently filed motions requesting the trial court to reconsider and amend its 24 June 2002 judgment and order. As an exhibit to his motion for reconsideration, defendant attached a copy of the Catawba County child support order. A hearing was conducted on these motions on 29 August 2002, at which an affidavit from Whitt was presented showing that he had not given his expert testimony at trial on behalf of plaintiff pursuant to a subpoena. Once it was pointed out to the trial court that, as Whitt had not been subpoenaed, the expert witness fee could not be assessed as a court cost, the trial court announced *sua sponte* that instead of assessing the expert witness fees as costs, they would be assessed as a Rule 11 sanction against defendant. The trial court stated defendant was "going to have to pay these fees one way or another" and that the trial court would "figure out a way to" make defendant pay Whitt's expert witness fee because defendant should have stipulated to the valuation of the business. Plaintiff's counsel noted that the appropriate statute for sanctioning defendant would be N.C. Gen. Stat. § 50-21(e) for willful obstruction and unreasonable delay of an equitable distribution proceeding. The trial court later stated it would make additional findings of fact to justify the award of expert witness fees as a sanction against defendant.

On the issue of whether the award of permanent child support should be modified to reflect defendant's child support obligations to his child from the subsequent marriage, the trial court stated that even if it had considered the amount of defendant's other child support obligation, it would not have altered the trial court's ruling in this case "because [defendant] decided to have another child after he separated from his wife." The trial court further clarified "I would not have adversely affected [the amount of support to the children of his marriage to plaintiff] to allow him to support this third child because that's just something that he was going to have to . . . figure out a way to do . . . ."

The trial court entered an amended judgment and order on 11 September 2002. In this amended judgment, the trial court made no adjustment to the amount of permanent child support and did not alter its finding of fact regarding defendant's other child support obligations to his child from a subsequent marriage. Furthermore, the trial court made additional findings of fact that defendant's refusal to accept plaintiff's valuation of the business resulted in a willful obstruction and unnecessary delay of the proceedings and concluded as a matter of law that defendant should be sanctioned under both

Rule 11 and N.C. Gen. Stat. § 50-21(e). As a result, defendant was ordered to not only pay a sanction in the amount of the expert witness fee of $14,500.00, but in addition to pay plaintiff's attorney's fees related to the presentation of the expert witness testimony in the amount of $4,235.00. The trial court further did not alter the effective date of alimony and permanent child support.

On 20 September 2002, defendant filed a motion for a new trial. In an order filed 30 October 2002, the trial court granted this motion in part on the limited issue of the appropriate amount of sanctions to be assessed against defendant. Before the trial court could reconsider the amount of sanctions, defendant filed a notice of appeal on 20 December 2002. The trial court subsequently entered an order filed on 14 February 2003, which reduced the amount of sanctions awarded by five dollars and awarded the sanctions solely under N.C. Gen. Stat. § 50-21(e).

The issues are whether (I) the trial court erred by summarily recasting the improper assessment of an expert witness fee as a sanction against defendant; (II) the trial court erred in failing to consider defendant's child support obligation to a child born of a subsequent marriage in a case where the presumptive child support guidelines do not apply; and (III) the trial court abused its discretion in setting the retroactive effective date of the award of alimony and child support.

[1] At the outset, we note that it appears this appeal was taken prematurely before the trial court could enter its final ruling on the appropriate award of sanctions against defendant. To the extent, however, this is an interlocutory appeal subject to dismissal, we elect to exercise our discretion under Rule 21 of the North Carolina Rules of Appellate Procedure and grant *certiorari* to consider the full merits of this appeal including the 14 February 2003 order filed subsequent to the notice of appeal. The dissent, while not disagreeing with our analysis on the merits, takes issue solely with our decision to grant a writ of certiorari in this matter.

It is an appropriate exercise of this Court's discretion to issue a writ of certiorari in an interlocutory appeal where, as in this case, there is merit to an appellant's substantive arguments and it is in "the interests of justice" to treat an appeal as a petition for writ of certiorari. *Sack v. N.C. State Univ.*, 155 N.C. App. 484, 490, 574 S.E.2d 120, 126 (2002); *see also Huffman v. Aircraft Co.*, 260 N.C. 308, 310, 132 S.E.2d 614, 615-16 (1963) (discussing the appropriateness of treating an appeal as a petition for writ of certiorari based on the merits of the

substantive issues). Contrary to the dissent's assertions, the North Carolina Court of Appeals has the discretionary authority to treat a purported appeal as a petition for a writ of certiorari and to issue such a writ in order to consider the appeal. *Staton v. Russell*, 151 N.C. App. 1, 7, 565 S.E.2d 103, 107 (2002). Under Rule 21 of the North Carolina Rules of Appellate Procedure:

> The writ of certiorari may be issued in appropriate circumstances by either appellate court to permit review of the judgments and orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action, or when no right of appeal from an interlocutory order exists . . . .

N.C.R. App. P. 21(a)(1). In this case, the dissent generally contends that we should not issue a writ of certiorari because this appeal, when originally taken, was interlocutory and no substantial right would have been lost had we declined to take the appeal. Under the express provision of Rule 21, however, this is exactly one of the situations in which our discretion to issue a writ of certiorari applies, i.e. when an appeal is interlocutory and unappealable.

The dissent specifically disagrees with our decision to include the 14 February 2003 order in our review of this appeal.[3] First of all, the issue of whether or not this Court has the power to issue a *sua sponte* writ of certiorari is not before us in this case. In defendant's petition for writ of certiorari to this Court, he expressly petitions this Court to review the 14 February 2003 order if we deem it necessary to the appeal, simply arguing in the alternative that since the errors assigned occurred in previous orders it was not necessary for him to appeal from the 14 February 2003 order. Specifically, defendant states in the opening paragraph of his petition, that he "respectfully requests that this Court enter an Order denying [the motion to dismiss the appeal] or in the alternative review the [Order] . . . dated . . . February 14, 2003 . . . ." In conclusion, defendant's petition to this Court states, "However, should this Court determine that [defendant] was required to perfect his appeal of the February 14, 2003 Sanctions Order in order for this Court to review the errors contained in the Judgment, Amended Judgment and Memorandum Order, [defendant] respect-

---

3. Although it has not been raised as a separate issue, even though the appeal of this case was taken prior to the entry of the 14 February 2003 order, the trial court retained jurisdiction to enter that order since an appeal from an unappealable interlocutory order does not divest the trial court of jurisdiction to proceed with the case. *See RPR & Assocs. v. University of N.C.-Chapel Hill*, 153 N.C. App. 342, 347, 570 S.E.2d 510, 514 (2002).

fully requests . . . that this Court issue its writ of certiorari and allow him to proceed with the pending appeal." Thus, defendant has requested this Court to issue a writ of certiorari to review the 14 February 2003 order.

Furthermore, because no appeal was taken specifically from the 14 February 2003 order, defendant has lost the right to appeal from that order by failing to take timely action, which is the second scenario under Rule 21 of the Appellate Rules where this Court has the discretion to issue a writ of certiorari. We note the dissent's suggestion, that the better approach would have been to take two separate appeals and then seek to consolidate them, while true, would have left us in essentially the same procedural posture in which we now find ourselves by granting the writ of certiorari.

Finally, the dissent suggests that reaching the merits of this appeal is inappropriate with regard to the 14 February 2003 order because there is not an adequate record to review the proceedings, stating that it is possible that other matters including child support may have been addressed. The 30 October 2002 order granting a new hearing, however, did so only on the limited issue of the amount of sanctions imposed against defendant and the 14 February 2003 order makes no reference to child support or any issue other than the amount of sanctions imposed. Therefore, the writ of certiorari is granted.

I.

[2] Defendant first argues the trial court erred in sanctioning him by requiring defendant to reimburse plaintiff for her expert witness fees and to pay the related attorney's fees.[4] We agree.

A trial court may not assess expert witness fees against a party as costs, unless the expert's appearance is pursuant to a subpoena. *See Rogers v. Sportsworld of Rocky Mount, Inc.*, 134 N.C. App. 709, 713, 518 S.E.2d 551, 554 (1999). Under N.C. Gen. Stat. § 50-21(e), a trial court shall impose sanctions if it finds a party "has willfully obstructed or unreasonably delayed or attempted to obstruct or

---

4. We note that to the extent defendant was sanctioned under Rule 11 of the Rules of Civil Procedure in the trial court's 11 September 2002 amended order, the trial court erred as a matter of law because the sanctions imposed upon defendant had nothing to do with the improper signing or filing of documents with the court. *See* N.C. Gen. Stat. § 1A-1, Rule 11 (2003) (trial court may impose sanctions for improper filing of frivolous pleadings, motions, or other papers); *See also Crutchfield v. Crutchfield*, 132 N.C. App. 193, 195, 511 S.E.2d 31, 33-34 (1999) (decision to impose sanctions under Rule 11 is reviewable *de novo*).

unreasonably delay any pending equitable distribution proceeding," and that "[t]he willful obstruction or unreasonable delay of the proceedings is or would be prejudicial to the interests of the opposing party." N.C. Gen. Stat. § 50-21(e) (2003). A trial court's decision to impose sanctions under Section 50-21(e) is generally reviewed for an abuse of discretion. *See Crutchfield v. Crutchfield*, 132 N.C. App. 193, 195, 511 S.E.2d 31, 33-34 (1999). Moreover, a party has a due process right to notice both (1) of the fact that sanctions may be imposed, and (2) the alleged grounds for the imposition of sanctions. *Griffin v. Griffin*, 348 N.C. 278, 279-80, 500 S.E.2d 437, 438-39 (1998). "In order to pass constitutional muster, the person against whom sanctions are to be imposed must be advised in advance of the charges against him." *Id.* at 280, 500 S.E.2d at 439. The fact that the party against whom sanctions are imposed took part in the hearing "and did the best he could do without knowing in advance the sanctions which might be imposed does not show a proper notice was given." *Id.*

In this case, the trial court initially ordered defendant to pay plaintiff's expert witness fee as a court cost, which was clearly impermissible since no subpoena had been issued. Once, however, it was pointed out that the expert had not been subpoenaed, the trial court simply ordered the expert witness fee paid as a sanction against defendant and added an additional sanction of attorney's fees, making appropriate findings to support the award of sanctions. Defendant was, however, given no due process notice that he would be subject to the imposition of sanctions upon reconsideration of the 24 June 2002 judgment and order, or the grounds upon which those sanctions would be imposed. *See id.* Here, defendant was misled by the notice he actually received of the hearing because he only had notice that the improper assessment of costs would be reconsidered, not that sanctions would be imposed as an alternative. *See id.*

Thus, the trial court erred by failing to provide defendant with proper notice that sanctions might be imposed upon him in violation of defendant's due process right to proper notice. Consequently, we conclude that it was error under N.C. Gen. Stat. § 50-21(e) for the trial court to summarily recast the improper assessment of expert witness costs as a sanction against defendant, where defendant was given no notice that he would be made subject to such a sanction or the grounds upon which such sanction would be imposed.[5] Thus, we

---

5. We note that we in no way address whether, had defendant been given proper notice, it was permissible under these facts to impose sanctions under N.C. Gen. Stat. § 50-21(e).

reverse the award of sanctions against defendant including both the award of the amount of the expert witness fee and the related attorneys' fees.

## II.

**[3]** Defendant next contends it was error for the trial court to fail to consider his child support obligation to a child born of his subsequent marriage in determining his child support in the present case. Again, we agree. Where, as in this case, the presumptive child support guidelines do not apply:

> In determining child support on a case-by-case basis, the order "must be based upon the interplay of the trial court's conclusions of law as to (1) the amount of support necessary to 'meet the reasonable needs of the child' and (2) the relative ability of the parties to provide that amount."

*Taylor v. Taylor,* 118 N.C. App. 356, 362, 455 S.E.2d 442, 447 (1995) (quoting *Newman v. Newman,* 64 N.C. App. 125, 127, 306 S.E.2d 540, 542 (1983)), *rev'd on other grounds* 343 N.C. 50, 468 S.E.2d 33 (1996). In determining the relative ability of the parties to pay child support, the trial court " 'must hear evidence and make findings of fact on the parents' income[s], estates . . . and present reasonable expenses.' " *Id.* at 362-63, 455 S.E.2d at 447 (quoting *Little v. Little,* 74 N.C. App. 12, 20, 327 S.E.2d 283, 290 (1985)). Although the trial court is granted considerable discretion in its consideration of the factors contained in N.C. Gen. Stat. § 50-13.4(c), the trial court's finding in this regard must be supported by competent evidence in the record and be specific enough to enable this Court to make a determination that the trial court " 'took "due regard" of the particular "estates, earnings, conditions, [and] accustomed standard of living" of both the child and the parents.' " *Id.* at 363, 455 S.E.2d at 447 (citation omitted).

In this case, the trial court's finding that defendant was not under any other child support obligation pursuant to a court order or other written obligation flies in the face of the uncontroverted evidence presented at trial by both parties that defendant was under a Catawba County District Court order to provide child support payments for a child born from his subsequent marriage. Thus, the trial court's finding is not supported by competent evidence in the record and is not sufficient to establish that the trial court took due regard of defendant's estates, earnings, conditions and other facts of the particular case as required under N.C. Gen. Stat. § 50-13.4(c). Therefore, we

hold, on the facts of this case, that in determining child support obligations where the presumptive guidelines do not apply, a trial court must take into consideration a parent's court ordered financial obligation to another child born of a subsequent marriage. Accordingly, we reverse the child support portion of the 11 September 2002 amended Judgment and Order and remand this case to the trial court for a redetermination of the parties' child support obligations.

III.

[4] Defendant finally contends that the trial court abused its discretion in making his child support obligations retroactive only until 1 February 2002. Prior to the entry of the permanent child support order, defendant had been ordered to pay temporary child support in a greater amount than finally ordered. Defendant argues that the trial court erred by not using its discretion to set an even earlier retroactive date for his permanent child support obligation. We conclude that although the prior temporary child support order was subject to modification, the trial court did not abuse its discretion in failing to modify that temporary order to set an earlier retroactive effective date for permanent child support. *See Miller v. Miller*, 153 N.C. App. 40, 48-49, 568 S.E.2d 914, 919-20 (2002).

Accordingly, we affirm the portion of the trial court's 11 September 2002 amended Judgment and Order setting the effective date of defendant's permanent child support obligation; we reverse the award of sanctions under Rule 11 and N.C. Gen. Stat. § 50-21(e); and reverse and remand this case for a new determination of the amount of defendant's child support obligation.

Affirmed in part, reversed in part and remanded.

Judge McCULLOUGH concurs.

Judge LEVINSON dissents.

LEVINSON, Judge dissenting.

This Court lacks the authority to address the merits of this appeal because (1) defendant appeals from an interlocutory order that does not implicate a substantial right, (2) defendant has not appealed from the final order, nor sought *certiorari* on the final order, and (3) neither N.C.R. App. P. Rule 21, nor any other statutory or common law basis, gives this Court jurisdiction to issue a writ of *certiorari sua*

*sponte* where a litigant neither appeals from a judgment or order, nor files a petition seeking *certiorari* for review of a judgment. The desire to provide appellate review for litigants is understandable. However, because jurisdiction is lacking, this appeal must be dismissed.

While the factual and procedural history outlined by the majority opinion is accurate, I note several additional events. After granting defendant's 20 September 2002 motion for a new trial on the issue of sanctions, the trial court conducted a hearing on the same on 11 December 2002. Thereafter, on 14 February 2003, the trial court entered what the majority acknowledges was the final order. The final order contained an amended order on sanctions, incorporated the findings of fact and conclusions of law of the 11 September 2002 Amended Judgment, and added new findings and conclusions pertaining to the imposition of sanctions. *After* the hearing on 11 December 2002 but *before* the trial court entered its final order on 14 February 2003, defendant gave notice of appeal from several of the court's earlier orders. However, defendant has neither appealed from the order of 14 February 2003, nor assigned error to it. On 10 October 2003 plaintiff filed a motion to dismiss defendant's appeal as interlocutory, and for violations of the North Carolina Rules of Appellate Procedure. On 23 October 2003 defendant filed a response asking this Court either to deny plaintiff's dismissal motion or to "issue its writ of *certiorari* and allow [defendant] to proceed with the **pending** appeal." (emphasis added). At that time no appeal from the final order was "pending."

---

I agree with the majority that defendant's appeal is interlocutory. Under N.C.G.S. § 1A-1, Rule 54(a) (2003), a judgment "is either interlocutory or the final determination of the rights of the parties." A final judgment "is one which disposes of the cause as to all the parties, leaving nothing to be judicially determined between them in the trial court." *Veazey v. Durham*, 231 N.C. 357, 361-62, 57 S.E.2d 377, 381 (1950).

Defendant appealed from several orders, the latest of which was the 30 October 2002 order, which granted in part defendant's motion for a new trial and scheduled a hearing on the issue of sanctions. The order of 30 October clearly required "further action by the trial court," and was therefore interlocutory.

I agree the final judgment in this case was the order of 14 February 2003. Defendant concedes as much in his Appeal

ZALIAGIRIS v. ZALIAGIRIS

[164 N.C. App. 602 (2004)]

Information Statement, which lists 14 February 2003 as the date final judgment was entered. In reaching this conclusion, I reject defendant's argument that the order of 14 February 2003 cannot be the final judgment because it "merely" determined the amount of sanctions. *See Steadman v. Steadman*, 148 N.C. App. 713, 559 S.E.2d 291 (2002) (trial court's order was interlocutory where it determined plaintiff was entitled to a money judgment, but deferred determination of the amount of judgment and attorney's fees until a later hearing). Furthermore, the final order also incorporated findings and conclusions from earlier orders, and added new findings and conclusions.

"Generally, there is no right of immediate appeal from interlocutory orders and judgments." *Sharpe v. Worland*, 351 N.C. 159, 161, 522 S.E.2d 577, 578 (1999). In the instant case, the Record on Appeal does not include a notice of appeal from the 14 February order. Also, defendant did not assign error to the final judgment, did not argue in his brief that there was error in this order, and has not sought to amend the record to include notice of appeal from the final order entered 14 February 2003. Moreover, in his response to plaintiff's dismissal motion and his petition for *certiorari*, defendant expressly disavows any desire to appeal the final order. "Failure of a party to file a notice of appeal regarding a particular order deprives this Court of jurisdiction over issues arising out of the order." *Albrecht v. Dorsett*, 131 N.C. App. 502, 504, 508 S.E.2d 319, 321 (1998).

The majority purports to utilize Rule 21 to grant *certiorari* in order to review the 14 February 2003 order. However, defendant's appeal from the interlocutory order of 30 October 2002 and earlier orders does not confer jurisdiction on this Court to review the final judgment of 14 February 2003 by way of Rule 21 *certiorari*. Under N.C.R. App. P. 21(a)(1), this Court may issue a writ of *certiorari* "in appropriate circumstances . . . to permit review of the judgments and orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action, or when no right of appeal from an interlocutory order exists[.]" Thus, we may issue a writ of *certiorari* in order to reach issues raised by an appellant who failed to timely file notice of appeal or failed to include the notice in the Record on Appeal. *Anderson v. Hollifield*, 345 N.C. 480, 482, 480 S.E.2d 661, 663 (1997) ("Rule 21(a)(1) gives an appellate court the authority to review the merits of an appeal by *certiorari* even if the party has failed to file notice of appeal in a timely manner."). Rule 21 does not apply, however, to the present case.

Defendant has not sought *certiorari* review of the 14 February 2003 order. It bears repeating that defendant did not assign error to the final judgment or argue in his brief that it was erroneous. Nor does defendant's petition for *certiorari* ask us to issue a writ of *certiorari* to permit him to appeal the 14 February 2003 order. Although defendant's introductory paragraph mentions the order, in the body of his motion and petition defendant takes pains to inform this Court that he intentionally "chose not to perfect his appeal, nor assign error" to the 14 February 2003 order "because he believed that the errors committed by the trial court were contained in [the trial court's earlier orders]." Indeed, defendant argues that he "should not be required to pursue an appeal of an order, or assign error to it, when he does not find that the trial court's errors were committed . . . in that order." Finally, the concluding paragraph of defendant's motion asks that "**in order for this Court to review the errors contained in the Judgment, Amended Judgment and Memorandum Order**, . . . [defendant requests] that this Court issue its writ of certiorari and allow him to proceed with **the pending appeal**." (emphasis added). The "pending appeal" concerned everything *but* the final order.

I am unaware of any other statutory or common law basis for our issuance of a writ of *certiorari sua sponte* where a litigant neither appeals from a judgment or order, nor files a petition seeking *certiorari* for review of a judgment. Such is the present circumstance.

Moreover, as a practical matter, the majority's attempt to review the final order ignores several glaring problems. Because notice of appeal was not taken from the final order, a record on appeal was not prepared as to that order. Because no assignments of error have been made as to the final order, the majority is apparently assuming that the errors assigned to the interlocutory orders apply equally to the final order. But, because the record does not include a transcript of the 11 December 2002 hearing on defendant's motion for a new trial, this Court has no information about the arguments and evidence presented at the hearing. Although the 11 December 2002 hearing was intended to concern only the issue of sanctions, it is possible that the court took additional evidence concerning the child support issue. Our Rules of Appellate Procedure, including Rule 21, afford appropriate structure to avoid such problems. The majority's application of Rule 21 to address the final order creates a dangerous precedent. To obtain review of the final order, defendant could—and should—have timely appealed from the final order or sought *certiorari* review as to that order. In that event, we could have consolidated both appeals.

Rule 21 affords this Court an opportunity to overlook technical violations of the Rules under appropriate, specifically prescribed limitations. But the authority to do so should be limited to cases in which the parties are actually *trying* to appeal an order and make a request to do so. Again, defendant has expressly insisted he has not tried to do so.

Finally, defendant failed to include the Statement of Grounds for Appellate Review required by N.C.R. App. P. 28(b)(4). This might not ordinarily warrant a dismissal. However, in the instant case, the question of defendant's entitlement to appellate review is a **central issue** before this Court, and the omission of a statement of grounds for appellate review is not merely a technical oversight. "It is not the duty of this Court to construct arguments for or find support for appellant's right to appeal[.]" *Jeffreys v. Raleigh Oaks Joint Venture*, 115 N.C. App. 377, 380, 444 S.E.2d 252, 254 (1994). Accordingly, this violation, in and of itself, is sufficient to warrant dismissal. During oral argument, counsel for defendant could not provide a satisfactory legal argument as to how this Court could address the merits of the 14 February 2003 order given the posture of this matter. Indeed, no such argument exists.

In sum, defendant's appeal is interlocutory and he has neither appealed from nor properly sought review by *certiorari* of the 14 February 2003 final judgment. In addition, defendant's failure to include a Statement of Grounds for Appellate Review constitutes a substantial violation of the Rules of Appellate Procedure warranting dismissal. In my view, defendant's appeal must be dismissed.